FRANKS, Appellee,

v.

NATIONAL LIME & STONE COMPANY, Appellant.

[Cite as *Franks v. Natl. Lime & Stone Co.* (2000), 138 Ohio App.3d 124.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–99–58.

Decided June 14, 2000.

See, 90 Ohio St.3d 1452, 737 N.E.2d 55.

*Betty D. Montgomery*, Attorney General, and *Susan J. Reynolds*, Assistant Attorney General, for appellee.

*Marshall & Melhorn, Thomas W. Palmer, Amy M. Natyshak* and *Michael A. Gonzalez*, for appellant.

SHAW, Judge.

The appellant, National Lime & Stone Company ("appellant"), appeals the judgment of the Hancock County Court of Common Pleas affirming the decision of the Ohio Civil Rights Commission ("OCRC"). For the following reasons, we affirm the judgment of the trial court.

The pertinent facts and procedural history of this matter are as follows. On September 28, 1993, the appellee, John Franks ("appellee") filed a charge with the OCRC, alleging that the appellant unlawfully discriminated against him due to his religion. Specifically, the appellant terminated the appellee's employment when he walked off the job prior to the end of his shift on Friday, April 23, 1993. The appellee is a Seventh–Day Adventist and believes that work should not be performed on the Sabbath, which is observed from sunset Friday until sunset Saturday.

The OCRC conducted a preliminary investigation and determined that probable cause existed to believe that the appellant had engaged in unlawful discriminatory practices. The appellant denied all the material allegations of the appellee's complaint. An evidentiary hearing was held on April 25, 1995. The hearing examiner filed findings of fact, conclusions of law, and recommendations on November 30, 1995. He recommended that the appellant make an offer of employment to the appellee as an equipment operator on first shift and pay the appellee the amount he would have earned had he been employed as an equipment operator on April 13, 1993, and had continued employment through the date of the offer of employment, less interim earnings. The appellant filed objections to the examiner's recommendations. On May 9, 1996, the OCRC issued a cease and desist order, which adopted the hearing examiner's report.

On June 10, 1996, the appellant filed a petition for judicial review with the Hancock County Court of Common Pleas. The trial court affirmed the judgment and found that the OCRC's order was supported by "some reliable, probative and substantial evidence." It is from this judgment that the appellant now appeals, asserting two assignments of error.

■ Before addressing the appellant's assignments of error, it is necessary to set forth the standard of review in this matter. According to R.C. 4112.06(E) and case law interpreting it, a trial court, in reviewing an appeal from an OCRC decision, must affirm the OCRC's finding of discrimination if the finding is supported by reliable, probative, and substantial evidence on the entire record. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 200, 20 O.O.3d 200, 204–205, 421 N.E.2d 128, 133–134; *Ohio Civ. Rights Comm. v. Case W. Res. Univ.* (1996), 76 Ohio St.3d 168, 177, 666 N.E.2d 1376, 1385. "Reliable" evidence is dependable or trustworthy; "probative" evidence tends to prove the issue in question and is relevant to the issue presented; and "substantial" evidence carries some weight or value. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, 1305.

 The role of a reviewing court, in considering the OCRC's order, is more limited than that of the trial court. An appellate court is to determine whether the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the OCRC's finding of discrimination. *Case W. Res. Univ.*, 76 Ohio St.3d at 177, 666 N.E.2d at 1385. An abuse of discretion occurs when the court's attitude in making its decision is unreasonable, arbitrary, or capricious, which includes drawing improper, foundationless inferences from the facts presented. *Id.; Ohio Civ. Rights Comm. v. Kent State Univ.* (1998), 129 Ohio App.3d 231, 717 N.E.2d 745.

### Assignment of Error No. 1

"The Hancock County Common Pleas Court abused its discretion and its decision was clearly erroneous in holding that there was reliable, probative and substantial evidence to support a prima facie case of religious discrimination and the Cease and Desist Order of the Ohio Civil Rights Commission ('OCRC') where the evidence was undisputed, and the OCRC Hearing Examiner found, that the Appellant National Lime & Stone Company ('NLS') had an established policy of terminating probationary employees twice late for work during their probationary period and that the charging party, John Franks ('Mr. Franks'), was a probationary employee twice late for work during his probationary period."

 The appellant contends that the appellee failed to establish a prima facie case of religious discrimination and that the evidence shows that the appellee was fired for being tardy twice during his probationary period, in violation of company policy. For the following reasons, we disagree.

 In evaluating a claim of religious discrimination, a two-step analysis is employed. See *Smith v. Pyro Mining Co.* (C.A.6, 1987), 827 F.2d 1081, 1085, certiorari denied, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503. An employee bears the initial burden of establishing a prima facie case of religious discrimination. He meets the burden by showing that he holds a sincere religious belief that conflicts with an employment requirement, he has informed his employer of the conflict, and he was discharged for failing to comply with the conflicting employment requirement. *Id.* See, also, *Equal Employment Opportunity Commn. v. Arlington Transit Mix, Inc.* (C.A.6, 1991), 957 F.2d 219, 221.[1]

---

1. These cases are federal cases interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code. However, the Supreme Court of Ohio has determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128.

We must begin by taking issue with the conclusion of the hearing examiner that what transpired in the initial job interview was irrelevant to establishing the religious discrimination in this case. The employer testified that during the initial job interview, the complainant was specifically informed of the possibility of Friday evening and weekend work, *was specifically asked about potential conflicts,* and affirmatively indicated to the employer that he had no schedule problems with such work. The employer further testified that the matter of complainant's religion was never mentioned during the interview until after the offer of employment and, then, only in the context of a requesting a particular *Tuesday* afternoon off during the first week of employment.

In sharp contrast, the complainant unequivocally testified that he specifically and fully informed the employer during the initial interview of his religious beliefs and the potential conflict between those beliefs and Friday evening second shift employment. The complainant also testified that his religious beliefs did not preclude emergency or overtime work during the weekend Sabbath.

In his findings of fact and conclusions of law, it is clear that the hearing examiner chose, albeit without explanation, to accept the testimony of the employer in its entirety and thus accepted as true, that the complainant failed to disclose and/or lied about any conflict between his alleged religious beliefs and the potential Friday work responsibilities during the initial job interview. However, based solely on a cursory review of *the tenets of the Seventh Day Adventist religion itself,* the hearing examiner essentially found as a matter of law that the religious belief *of this complainant* was sincerely held and summarily found that any failure to disclose the work conflict in the interview was "irrelevant" because this was not a "failure to hire" case. This analysis is inadequate because it improperly purports to evaluate only the "sincerity" of the religion itself.

Presumably, the hearing examiner as the trier of fact would have the prerogative to find the religious belief of a particular complainant was sincerely held based on the totality of the evidence, notwithstanding a deceptive initial job interview. However, in no event is the deliberate failure to disclose and/or lying about a religious work conflict in the initial job interview irrelevant to the pertinent issues of (1) whether a complainant holds a sincere religious belief that conflicts with an employment requirement or (2) whether that complainant has adequately informed the employer of that conflict.

Specifically, it is our conclusion that the deliberate failure to disclose a known religious conflict in response to direct employer-questioning during an initial job interview does not constitute properly "informing the employer of the conflict" within the test of *Smith v. Pyro Mining,* 827 F.2d at 1085. Moreover, we believe the failure to fully and honestly disclose such a conflict in the initial interview clearly calls into question the extent to which a religious belief is

*sincerely held by the party claiming to hold it* and thus whether the employee's belief in a particular religion really conflicts with an employment requirement. As a result, the matter of what was said during the initial job interview in this case should have been the subject of further inquiry and determination by the hearing examiner and it was error not to do so.

Nevertheless, the standard of review set forth by the trial court is quite correct. Based on that standard of review and the totality of the evidence in this record, including the complainant's testimony, we are persuaded that there is ample evidence to support the outcome reached by the hearing officer notwithstanding the error.

In this case the hearing examiner, and the trial court by its affirmation, found that the appellee had established a prima facie case of religious discrimination. The appellee is a practicing Seventh–Day Adventist. Seventh–Day Adventists believe that work should not be performed on the Sabbath, which is from sunset Friday until sunset Saturday. The appellee was assigned to work second shift and scheduled to work from 2:45 p.m. until 10:45 p.m., Monday thru Friday. During the first week he was assigned to second shift, the appellee informed his supervisor that due to his religious beliefs, he would not be able to complete his shift on Fridays. On Friday, April 23, 1993, the appellee walked off the job early. The appellee's employment was terminated on Monday, April 26, 1993. The reason stated on the appellee's separation notice was "failure to complete shift hours assigned to his position (leaving before end of shift, Fridays)."

The appellant contends that the hearing examiner erred in finding that the appellee established a prima facie case when there was undisputed evidence that he had violated company policy. The appellant has an established policy, whereby employees who are late for work twice during their probationary period are subject to termination. The evidence shows that the appellee was made aware of this policy at the time of his initial interview and it is undisputed that the appellee was late for work on both April 7 and April 14, 1993. The appellant contends that this violation of company policy was a justifiable reason for the appellee's termination.

The hearing examiner concluded that the appellee had indeed violated the appellant's tardiness policy, but the timing and reason stated for his discharge support the conclusion that he was discharged because he failed to complete his scheduled work shift on Friday, April 23, 1993. The appellant made no effort to enforce the tardiness policy until the religious accommodation issue surfaced.

The hearing examiner pointed to the following evidence to support this conclusion. Gary Smyth, a superintendent at National Lime & Stone, testified that he was not aware of the appellee's second tardiness until April 22, 1993. However, Smyth spoke to Brian Barger, vice president of administration at

National Lime & Stone, on April 23, 1993, about the appellee's intention to leave work early on Fridays because of his religion. Barger testified that Smyth also informed him in this conversation that the appellee had been late for work twice during his probationary period. Yet Smyth did not recommend that appellee be discharged, nor did Barger instruct Smyth to discharge him for violating the tardiness policy. Instead, Barger informed Smyth that he would contact him if the appellee actually left early that night.

We agree with the trial court that there is reliable, probative, and substantial evidence to establish that the appellee met his burden of showing a prima facie case of religious discrimination. Given that, we certainly cannot find that the trial court abused its discretion in affirming the decision of the hearing examiner. Accordingly, the appellant's first assignment of error is not well taken and is overruled.

### Assignment of Error No. 2

"The Hancock County Common Pleas Court abused its discretion and its decision was clearly erroneous in its failure to apply the Supreme Court's reasonable accommodation/undue hardship analysis in the religious discrimination context as set forth in *TWA v. Hardison*, 432 U.S. 63[, 97 S.Ct. 2264, 53 L.Ed.2d 113] (1977) and in concluding that NLS could have accommodated Mr. Franks without undue hardship by forcing one of the new employees on the first shift to switch shifts with Mr. Franks where such an accommodation would impose more than a *de minimis* burden on NLS."

The appellant contends that the appellee could not have been reasonably accommodated without the company suffering an undue hardship. For the following reasons, we disagree.

Once a prima facie case of discrimination is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. The reasonableness of an accommodation is determined on a case-by-case basis. *Arlington Transit Mix, Inc.*, 957 F.2d at 221.

In this case, the hearing examiner found that the appellant failed to make a reasonable effort to accommodate the appellee's religious practices. The most obvious accommodation would have been to move the appellee to first shift, where the required work hours would not interfere with his Sabbath. The appellant refused to transfer the appellee to first shift, claiming that doing such would cause it undue hardship.

The appellant relies on the United States Supreme Court ruling in *Trans World Airlines, Inc. v. Hardison* (1977), 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d

113, as support for it's contention. In that case, the Supreme Court held that to require an employer to bear more than a de minimis cost in order to accommodate an employee's religious practices is an undue hardship. However, *TWA* is clearly distinguishable from the case *sub judice*. In that case, the employee was subject to a seniority system in a collective bargaining agreement between the employer and the union. Under this seniority system, the most senior employees have first choice for job and shift assignments as they become available. In order to accommodate the plaintiff, the employer would have had to breach the seniority system. The court held that the duty to accommodate does not require the employer to violate an otherwise valid collective bargaining agreement. It would be anomalous to conclude that by "reasonable accommodation" Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others. *Id.* at 81, 97 S.Ct. at 2275, 53 L.Ed.2d at 129.

In the case *sub judice,* a similar seniority agreement was in place. Pursuant to the collective bargaining agreement between the appellant and the union, employees are entitled to shift preference by virtue of seniority. However, the appellee was not yet a union member and therefore was not subject to the seniority system. Employees do not become members of the union until they have completed a ninety-day probationary period. Therefore, the appellant would not have been required to breach the collective bargaining agreement in order to accommodate the appellee.

A total of eight new employees were hired at the same time that the appellee was hired. After two weeks of orientation, the new employees were informed of their shift assignments. Two new employees were assigned to work first shift, four were assigned to second shift, and two were assigned to third shift. None of these eight employees was subject to the seniority system. The hearing examiner found that the appellant could have reasonably accommodated the appellee by moving him to first shift. He could have been switched with one of the new employees assigned to first shift, thereby avoiding any interference with the collective bargaining agreement. The hearing examiner held that the appellant failed to show how this accommodation would cause the appellant an undue hardship.

The appellant cited safety concerns as the reason the appellee could not be switched. The appellee was the most experienced of the new hires and his experience was needed on second shift. The appellant claimed that they could not afford to put less experienced employees on second shift where there was less

supervision. The hearing examiner found this explanation to be inadequate. First of all, the appellant's contention is purely speculative, as it provided no evidence to support this contention. Moreover, the appellee may have had more experience than the other new hires, but he had no duty to supervise or train them. The appellee had the same title and salary as all the new employees. Furthermore, there was in fact supervision on the second shift for the new employees, as a supervisor was brought in from another plant to oversee the new employees on the second shift. The evidence reveals that after the appellee was terminated, the machine he operated ran unmanned for over a week. Therefore, we agree with both hearing officer and the·trial court that the appellant's contention that the appellee was indispensable on second shift is unpersuasive.[2]

In short, there is ample evidence in the record to indicate that the appellant failed to make any reasonable effort to accommodate the appellee's religious beliefs after it was made aware of the conflict. Therefore, the trial court did not abuse its discretion by affirming the decision of the hearing examiner. Accordingly, the appellant's second assignment of error is overruled.

Having found no error·prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

THOMAS F. BRYANT, J., concurs.

HADLEY, P.J., concurs in judgment only.

---

**2.** While not mentioned by the hearing examiner as a reasonable accommodation, it appears to us that if the crusher could operate unmanned for over a week, the appellant could have allowed the appellee to leave a few hours early on Fridays without experiencing any significant loss or undue hardship.