**YEAGER, Appellant,**

v.

**OHIO CIVIL RIGHTS COMMISSION et al., Appellee.**

[Cite as *Yeager v. Ohio Civ. Rights Comm.*, 148 Ohio App.3d 459, 2002-Ohio-3383.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2001–T–0076.

Decided June 28, 2002.

Guarnieri & Secrest and Michael D. Rossi, for appellant.

Betty D. Montgomery, Attorney General, and Patrick M. Dull, Assistant Attorney General, for appellee.

DIANE V. GRENDELL, Judge.

{¶ 1} This is an administrative appeal taken from the decision of the Trumbull County Court of Common Pleas, which determined that appellee, the Ohio Civil Rights Commission ("the OCRC"), did not act in an unlawful, irrational, arbitrary and/or capricious manner by failing to issue a probable cause determination that Key Bank engaged in religious discrimination by utilizing its check-cashing procedures.

{¶ 2} The following facts are relevant to this appeal. On November 8, 1999, appellant filed a charge with the OCRC alleging religious discrimination against Key Bank. According to his affidavit, appellant was a Christian Fundamentalist, whose religious beliefs prevented him from being identified by either a number, such as a Social Security, or a mark, such as a finger/thumb print. Appellant believed that on May 15, 1999, he was unlawfully discriminated against by a place of public accommodation when Key Bank denied him the opportunity to complete a financial transaction and cash a check on the basis of his religion:

{¶ 3} "After correctly endorsing the back of the check and giving it to the [Key Bank] teller * * *, she stated that I needed to provide her with a driver's license and a pictured worker I.D. I then provided her with my lawful Ohio Driver's License for identification, and a pictured employee card from my

employer. She then, without my permission and knowledge, made unlawful use, as a form of identification, my Social Security Number by disclosing it in writing across the face of this check. * * *

{¶ 4} " * * * This teller then requested me to take my right hand and saturate my thumb with ink and make my thumbprint on the check. I refused. She stated it was 'bank policy' that all non-Key Bank customers be required to provide a fingerprint. I told her that I am exercising a sincerely held religious belief that prevents me from doing this."

{¶ 5} On April 27, 2000, the OCRC determined that there was no probable cause for appellant's charge. As such, appellant requested reconsideration of the OCRC determination. Apparently, a hearing was held on June 8, 2000. Then, on September 25, 2000, the OCRC adopted the original recommendation of no probable cause.

{¶ 6} In accordance with R.C. 4112.06, on October 24, 2000, appellant filed a petition with the trial court seeking judicial review of the OCRC's determination that it was not probable that Key Bank had engaged in unlawful discriminatory practices under R.C. Chapter 4112.

{¶ 7} The record of the proceedings before the OCRC was filed with the trial court, and the matter was fully briefed. On July 27, 2001, the trial court determined that the OCRC did not act in an unlawful, irrational, arbitrary and/or capricious manner by failing to issue a probable cause determination. It is from this judgment appellant appeals, submitting a single assignment of error for our review:

{¶ 8} "The trial court erred in finding appellee's 'not probable' determination and consequent refusal to issue an R.C. Chapter 4112 complaint to be 'lawful, rational and not arbitrary or capricious.' "

{¶ 9} In his lone assignment of error, appellant submits two separate issues for review. First, appellant contends that since the OCRC determination ignored the Free Exercise Clause, the trial court erred in finding its determination to be lawful. According to appellant, Key Bank's Social Security and thumbprint-identification policy, which applied only to noncustomers who sought to have checks cashed, impermissibly forces him to choose between adhering to his religious beliefs and forfeiting the public accommodation of cashing his check, or abandoning his religious beliefs in order to have his check cashed. Appellant further believes that since Key Bank account holders are exempt from its identification policy, the bank cannot, without compelling reasons, refuse to extend that exemption to cases of religious hardship.

{¶ 10} Appellant, however, fails to recognize that the OCRC is *not* an administrative agency empowered to investigate alleged violations of the Free

Exercise Clause. Rather, the OCRC is concerned with unlawful discriminatory practices as delineated in R.C. Chapter 4112. See R.C. 4112.04(A)(6); R.C. 4112.05. As such, appellant's arguments concerning the violation of the Free Exercise Clause are not applicable here.

{¶ 11} Second, appellant maintains that the OCRC never shifted the burden to Key Bank to show that it could not have reasonably accommodated him without undue hardship in conducting its business. From this, appellant concludes that the OCRC's determination was incomplete and irrational.

{¶ 12} Before we address appellant's arguments, it is necessary to set forth the appropriate standard of review in this matter. "Upon review of a determination that no probable cause exists [to issue a complaint], the common pleas court must determine whether [the] OCRC's decision is unlawful, irrational, and/or arbitrary and capricious." *Coleman v. Warner* (1992), 82 Ohio App.3d 263, 265, 611 N.E.2d 878. See, also, *Salazar v. Ohio Civ. Rights Comm.* (1987), 39 Ohio App.3d 26, 27, 528 N.E.2d 1303; *McCrea v. Ohio Civ. Rights Comm.* (1984), 20 Ohio App.3d 314, 317, 20 OBR 416, 486 N.E.2d 143. Absent an abuse of discretion, an appellate court will not disturb the trial court's determination. *Ashiegbu v. Ohio Civ. Rights Comm.* (June 18, 1996), 10th Dist. No. 96APE01–4, at 3–4, 1996 WL 339958; *Kutz v. Ohio Edn. Assn.* (Mar. 16, 1995), 10th Dist. No. 94APE06–781, at 3–4, 1995 WL 115428. An abuse of discretion connotes more that an error of law or judgment; rather, it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 13} At the outset, we note that there is little precedent in Ohio regarding the failure to accommodate an individual based on religious discrimination by a place of public accommodation. In order to establish a prima-facie case of religious discrimination in a public accommodation case, appellant has to establish the following: "(a) Complainant has a bona fide religious belief that conflicts with a rule or regulation of a place of public accommodation; (b) Complainant informed the representative of the place of public accommodation of this belief; (c) Complainant was deprived of a benefit for failure to comply with the conflicting rule or regulation." *In re Chui* (Oct. 14, 1986), Ohio Civ. Rights Comm. Complaint No. 4386, at 2, 1986 WL 327228. See, also, *Franks v. Natl. Lime & Stone Co.* (2000), 138 Ohio App.3d 124, 740 N.E.2d 694. (employment discrimination case).

{¶ 14} With the foregoing in mind, we consider the case at bar. We will assume, arguendo, as did the OCRC, that appellant's religious beliefs concerning his Social Security number and thumbprint are sincerely held and that those beliefs conflicted with Key Bank's identification policy with the following caveat.

{¶ 15}   We note that appellant voluntarily provided Key Bank with his driver's license, which contained his Social Security number. Apparently, appellant's religious beliefs did not extend to the use of his Social Security number on his driver's license.   In fact, the OCRC recognized this in its April 27, 2000 decision:

{¶ 16}   "Evidence substantiates that the [appellant] did not refuse to use his social security number when it was requested initially.   Evidence substantiates that [appellant] was upset after [Key Bank's] teller wrote [appellant'] social security number on the face of the check.   Therefore, [appellant's] convictions regarding the use of his social security number are suspect."

{¶ 17}   Contrary to appellant's contention, R.C. 4501.31 was in effect at the time he provided Key Bank with his driver's license containing his Social Security number.   Pursuant to R.C. 4501.31(A), appellant could have declined to have his Social Security number placed on his driver's license.[1]

{¶ 18}   Nevertheless, a review of the record shows that appellant complained to several Key Bank employees about the conflict between their identification policy and his religious beliefs.[2]   Furthermore, in their position statement, Key Bank conceded to the fact that appellant was denied the ability to cash a check at its financial institution.   Accordingly, appellant has established a prima-facie case of religious discrimination.[3]

{¶ 19}   Once a prima-facie case of religious discrimination is established, the burden then shifts to the business "to show that it could not accommodate

---

1.   {¶ a}   The following version of R.C. 4501.31(A) was in effect in May 1999 at the time appellant provided Key Bank with his driver's license containing his Social Security Number:

{¶ b}   "Every driver's license, commercial driver's license, temporary instruction permit, and identification card issued by the registrar of motor vehicles or a deputy registrar on or after the effective date of this section shall display the social security number of the person to whom the license, permit, or card is issued *unless the person to whom the license, permit, or card is to be issued specifically requests that the person's social security number not be displayed on the license, permit, or card.*   If federal law requires the person's social security number to be displayed on the license, permit, or card, the social security number shall be displayed on the license, permit, or card notwithstanding * * * this division."

2.   As an aside, we note that the bank personnel had no way to confirm appellant's claim of valid religious beliefs at the time of the incident.

3.   {¶ a}   This is confirmed by the OCRC's April 27, 2000 determination, which stated in relevant part:

{¶ b}   "Staff notes that the religious beliefs, convictions and tenets of Charging Party's [appellant] faith have not been questioned.   Therefore, it is assumed that Charging Party has standing to file this matter.   * * *"

{¶ c}   "Furthermore, Staff notes that the accounts of Charging Party and Respondent [Key Bank] are not in question.   Both parties agree that Charging Party was denied the opportunity to cash the check, and that Charging Party complained to several members of Respondent's Staff regarding their policies.   * * *"

Complainant's religious belief without an undue hardship on the conduct of its business." *Chui* at 3. See, also, *Franks* at 131, 740 N.E.2d 694.

{¶ 20} Contrary to appellant's assertion, the OCRC did shift the burden to Key Bank to demonstrate undue hardship in accommodating him. In fact, in the September 25, 2000 determination, the OCRC stated the following:

{¶ 21} "Moreover, the Respondent's [Key Bank] procedure is part of the normal business practice in the banking industry and is designed to eliminate check fraud and counterfeiting. The thumbprinting signature program was implemented through the Ohio Attorney General's Office in an effort to reduce the loss of nearly ten billion dollars suffered annually by banks due to check fraud.[4] *In the instant case it is simply not reasonable for a banking institution to waive its established security provision, to accommodate the alleged religious beliefs of an individual.*

{¶ 22} "The evidence substantiates that Charging Party [appellant] had other alternatives available to him for cashing checks without providing his social security number or thumbprint, including the opening of an account with Respondent. *As the obligation to accommodate a religious belief is de minimis, the hardship placed on the Respondent exceeds its obligation to make the accommodation requested by Charging Party.*" (Emphasis added.)

{¶ 23} "The reasonableness of an accommodation is determined on a case-by-case basis." *Franks* at 131, 740 N.E.2d 694. In the instant matter, the most obvious accommodation would have been to exempt appellant from both providing a thumbprint and his Social Security number to identify him, and instead, have him provide other forms of identification.

{¶ 24} As to this point, Key Bank did not specifically provide evidence that using other forms of identification would be ineffective in preventing fraud. However, in its position statement, Key Bank explained the importance of its noncustomer identification policy and emphasized that the policy was implemented for security reasons to combat against check fraud and counterfeiting:

{¶ 25} "While a driver's license or social security card can be altered, the likelihood of a thumbprint alteration is rare because a thumbprint is unique to each person."

{¶ 26} Undue hardship need only be a de minimis cost to the business. *Franks* at 132, 740 N.E.2d 694; *Ward v. Hengle* (1997), 124 Ohio App.3d 396, 404, 706 N.E.2d 392 (employment discrimination cases). To hold that individuals with

---

4. The Ohio Attorney General's Office also indicated that other states such as Arizona, Utah, Colorado, Nevada, and Texas have experienced a significant decline in fraud loss as a result of participating in the thumbprint-signature program.

certain religious beliefs should be exempt from the noncustomer identification policy or provide other forms of identification that may be altered would place an undue hardship on Key Bank's security goal, which is to prevent fraud. Furthermore, appellant had other options available to him, such as cashing the check with his own bank, or cashing the check at a check cashing service.

{¶ 27}   In summation, we hold that the trial court did not abuse its discretion in finding that the OCRC's determination of no probable cause was not unlawful, irrational, and arbitrary and/or capricious. We would note, however, that we feel the issue raised in this case is of great importance. As such, this court is well aware of the competing concepts between businesses requiring its customers to provide certain forms of identification in an effort to prevent fraud and determining what constitutes reasonable identification. In each instance, the goal appears to be the same, that is, to protect Ohio consumers.

{¶ 28}   Based on the foregoing analysis, appellant's single assignment of error is without merit, and the judgment of the trial court is affirmed.

Judgment affirmed.

WILLIAM M. O'NEILL, P.J., and JUDITH A. CHRISTLEY, J., concur.