DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Brenda Jeanette Gammon appeals the decision of the Lucas County Court of Common Pleas affirming the finding of no probable cause and the dismissal of her charge of sexual discrimination against appellees Hinkle Manufacturing, Inc. and Taber H. Hinkle. Because we conclude that the trial court used the appropriate standard, we affirm.
 {¶ 2} Gammon was employed by Hinkle Manufacturing, Inc. in 1995. During her employment, she received several promotions and eventually became the materials manager. In 2000, Taber Hinkle became the president and general manager of the company and decided that the company needed to restructure. As a result of the restructuring, Fritz Grieser, the controller, was discharged, and Gammon was offered the position of costing analysis manager. She was told that while her job responsibilities would change, this was a lateral move and that her salary and benefits would remain the same. Initially, Gammon had accepted the offer and then decided to quit because she found the new position to be unacceptable.
 {¶ 3} On May 23, 2001, Gammon filed an affidavit with the Ohio Civil Rights Commission ("OCRC") alleging that she was subject to different terms and conditions of employment, demoted and constructively discharged by Hinkle Manufacturing because of her sex. Carl Mossman conducted an investigation on behalf of the OCRC and recommended to the OCRC a finding of no probable cause. The OCRC entered such a determination and dismissed Gammon's charge on March 14, 2002. On March 25, 2002, Gammon requested that the OCRC reconsider its decision. She contended that the investigation was incomplete because Mossman had not interviewed her main witness, Donald Marriott, the former general manager of Hinkle Manufacturing. Upon reconsideration, the OCRC again determined that it was not probable that Hinkle Manufacturing engaged in sexual discrimination. Gammon then filed her petition for judicial review with the Lucas County Court of Common Pleas on May 24, 2002. She attached to her brief in support of the petition an affidavit from Marriott that he had never been contacted by the OCRC. On February 10, 2003, the trial court denied Gammon's petition and affirmed the determination of the OCRC, finding the decision was premised on a legal, rational and defensible basis.
 {¶ 4} Gammon now raises the following sole assignment of error on appeal:
 {¶ 5} "The trial court found the findings of the Ohio Civil Rights Commission as to the facts pertaining to the charge filed by Appellee to be conclusive despite the failure of such findings to be supported by reliable, probative, and substantial evidence on the record."
 I. Standard of Review {¶ 6} Gammon first argues that the trial court used the wrong standard of review when ruling on her petition. The trial court relied on this court's decision in Salazar v. Ohio Civil Rights Comm. (1987),39 Ohio App.3d 26 and determined that the standard of review was whether OCRC's decision was unlawful, irrational, and/or arbitrary and capricious. Gammon contends that R.C. 4112.06(E) mandates that the standard of review for a dismissal of a pre-complaint affidavit is whether there was reliable, probative and substantial evidence to support the OCRC's findings. She argues that if the trial court had used the appropriate standard it would have found that the investigation conducted by the OCRC was specious and that the findings were not reliable, probative, nor substantial. Gammon argues that this court should overrule its previous decisions in Salazar, supra.; Belair v. Ohio Civil RightsComm (Oct. 9, 1987), 6th Dist. No. L-87-016; and Roberts v. Ohio CivilRights Comm (May 29, 1987), 6th Dist. No. L-86-410 as improper abrogation of the applicable, controlling statute.
 {¶ 7} In Salazar, we followed McCrea v. Ohio Civil Rights Comm.
(1984), 20 Ohio App.3d 314. Salazar, supra. at 27. McCrea carefully reviewed the statutory procedure after an affidavit of discrimination is filed with the OCRC. McCrea, supra. at 315-316. Before an actual complaint is filed, R.C. 4112.05 provides for an informal, ex parte investigation of the charge. Id. at 316. Only after a finding of probable cause is a complaint issued and a formal hearing conducted with exhibits and testimony of witnesses. As a result, with respect to pre-complaint appeals, the reliable, probative and substantial evidence review could not apply since no evidentiary hearing is held. Id. at 317. Also, because the probable cause determination involves the exercise of the OCRC's expertise, good judgment and sound discretion, the appropriate standard of review is whether the OCRC's refusal to issue a complaint was based upon unlawful, irrational or arbitrary reasons. Id.
 {¶ 8} In Salazar, we noted that other courts of appeals had also followed McCrea. Salazar, supra. at 27-28. Since Salazar, additional courts of appeals have adopted the reasoning in McCrea. See, Yeager v.Ohio Civ. Rights Comm., 148 Ohio App.3d 459, 2002-Ohio-3383; Ashiegbu v.Ohio Civil Rights Comm. (June 18, 1996), 10th Dist. No. 96APE01-4; Castlev. Kelsey-Hayes Co. (July 9, 1990), 5th Dist. No. 89-CA-39; Coe v.Cleveland (Mar. 23, 1989), 8th Dist. No. 55126; May v. Ohio Civil RightsComm. (1989), 58 Ohio App.3d 56.
 {¶ 9} Gammon argues the appellate courts are substituting their judgment for that of the General Assembly and the clear legislative intent as to the standard of review of findings of the commission as stated in R.C. 4112.06(E). We do not believe this to be the case. R.C.4112.06(E) states "The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole." The language "reliable, probative and substantial" is also used in R.C. 4112.05 when referring to post-complaint procedures. R.C. 4112.05(E) requires that the hearing examiner shall take into account all reliable, probative, and substantial statistical or other evidence produced at the hearing. R.C. 4112.05(G) states that if, upon all reliable, probative, and substantial evidence presented at a hearing, the OCRC determines an unlawful discriminatory practice is occurring, the OCRC shall issue a cease and desist order. However, the legislature did not include the "reliable, probative, and substantial evidence" language when setting forth the pre-complaint procedures. R.C. 4112.05(B) provides for the commission to determine after a preliminary investigation whether it is probable an unlawful discriminatory practice has occurred. Therefore, we see no reason to overrule our decisions in Salazar, Roberts, and Belair.
 II. Review of the trial court's findings {¶ 10} Having found that the trial court applied the appropriate standard of review, we will not disturb the trial court's determination unless there has been an abuse of discretion. Yeager, supra. at ¶ 12. An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court.
 {¶ 11} In its judgment entry, the trial court initially decided that it would not consider the affidavit of Marriott, Hinkle Manufacturing's former general manager. The trial court found that his affidavit did not contain newly discovered evidence and that Gammon did not show that Mossman, the OCRC's investigator, lacked reasonable diligence in his attempts to contact Marriott. Furthermore, the trial court found that any information Marriott could potentially offer would not be relevant because he had left Hinkle Manufacturing in 1999, more than a year before Gammon alleges she was demoted and constructively terminated. Because Gammon did not raise the trial court's failure to consider Marriott's affidavit as an assignment of error, we also will not consider it.
 {¶ 12} Gammon alleges that she was subject to different terms and conditions of employment, demoted and constructively discharged by Hinkle Manufacturing because of her sex. R.C. 4112.02 provides in pertinent part:
 {¶ 13} "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 14} When an individual files a discrimination suit in Ohio for violating R.C. 4112.02, the Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, § 2000(e), Title 42 U.S. Code is generally applicable. Plumbers Steamfitters Commt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192,196. The first step of inquiry is whether the complainant can show a prima facie case of discrimination. Id. at 197. The basic elements of a discrimination case are that: (1) the employee belongs to a protected class; (2) the employee is discharged; (3) the employee is qualified for the position; and (4) the employee is replaced by a person not belonging to the protected class. Id.
 {¶ 15} In the case at bar, Gammon maintains that she was subjected to different working terms and conditions because she was denied overtime compensation males received, that she was demoted, and that she was constructively terminated. The OCRC investigator talked with a number of people. All of them indicated that Gammon was not entitled to overtime compensation because she was a manager. Floor supervisors were required to be present when the plant was in production and were eligible for overtime. Managers did not have to be present and thus were not entitled to overtime compensation. The new position offered to Gammon, furthermore, was not a demotion. Gammon was going to receive the same salary and benefits and would continue to report to the general manager. Taber Hinkle encouraged Gammon to accept the new position, while he discharged the male controller. Finally, Gammon's position was not given to Joseph Graden. Graden remained the master scheduler, and Gammon's job responsibilities were spread among several people.
 {¶ 16} Based on the above, we find that the trial court did not abuse its discretion when it determined that the OCRC's decision was premised on a legal, rational and defensible basis. Gammon's sole assignment of error is not well-taken, and thus, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs are assessed against appellant.
 JUDGMENT AFFIRMED.