DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Aircraft Braking Systems Corporation ("ABS"), appeals the decision of the Summit County Court of Common Pleas, which affirmed the decision of Appellee, Ohio Civil Rights Commission ("Commission"). We affirm.
 {¶ 2} James Caddell and Henry Thornton were employees of ABS when they were terminated from their positions on February 16, 2000, for violating ABS' policy on workplace violence. Caddell and Thornton subsequently filed charge affidavits with the Commission on June 26, 2000, and June 28, 2000, respectively. The affidavits alleged that ABS' decision to terminate their employment was motivated by racial factors. The Commission investigated the charges, found there was evidence to support the charges of discrimination and concluded that ABS had committed unlawful discriminatory practices, in violation of R.C.4112.02(A). The Commission issued Complaints alleging the same on behalf of Caddell and Thornton.
 {¶ 3} A hearing was conducted on April 9-11 and 29-30, 2002, before Administrative Law Judge ("ALJ") Todd Evans. ALJ Evans ceased working for the Commission prior to issuing his Findings of Fact, Conclusions of Law and Recommendations. On June 28, 2004, ALJ Denise Johnson issued a Findings of Fact, Conclusions of Law and Recommendation. ALJ Johnson reviewed the record, including a 1550-page transcript, numerous exhibits admitted at the hearing before ALJ Evans and the post-hearing briefs of both parties. ALJ Johnson's decision stated that she "disbelieves the underlying reasons that Responded articulated for discharging Complainants and concludes that, more likely than not, they were a pretext or cover-up for race discrimination[.]" ABS filed its objections to Judge Johnson's decision on July 23, 2004.
 {¶ 4} The Commission adopted Judge Johnson's decision on August 12, 2004, and they issued two cease and desist orders to ABS on October 7, 2004, on behalf of each claimant. The orders stated that ABS was to cease and desist from all discriminatory practices and provided that Caddell and Thornton should be reinstated with back pay, including raises, benefits and overtime based on wages they would have been paid had they not been terminated from February 16, 2000 to October 23, 2000.
 {¶ 5} On November 2, 2004, ABS filed a Petition for Review of Final Order of the Ohio Civil Rights Commission Pursuant to Revised Code 4112.06 in the Summit County Court of Common Pleas. The trial court consolidated both complainants' cases together in Case No. CV-2004-11-6349. ABS filed a motion for summary judgment on December 10, 2004, which the trial court denied on February 7, 2005.
 {¶ 6} On July 26, 2005, the trial court affirmed the Commission's decisions, stating the Commission's Order was proper and supported by reliable, probative and substantial evidence. The trial court further concluded that the Order was not barred by res judicata or collateral estoppel, and stated that it was not improper to permit a successor ALJ to issue the final conclusions and recommendations.
 {¶ 7} ABS appealed, asserting three assignments of error for our review. For ease of discussion, we will address the first and second assignments of error together.
 ASSIGMENT OF ERROR I
"The Trial Court erred by failing to vacate and set aside the Ohio Civil Rights Commission's decision and the Cease and Desist Orders and by failing to remand this matter for a new hearing on the merits."
 ASSIGNMENT OF ERROR II
"The Trial Court erred in affirming the Ohio Civil Rights Commission's decision and adoption of the Findings of Fact, Conclusions of Law, and Recommendations issued by Administrative Law Judge Johnson."
 {¶ 8} In its first and second assignments of error, ABS asserts that the trial court erred when it failed to vacate the decision by the Commission and failing to remand the matter for a new hearing when a second ALJ issued the conclusive findings of fact, conclusions of law and recommendations. Specifically, ABS contends that ALJ Johnson, who did not observe the witnesses' testimony, should not have been permitted to render a decision because she was unable to assess the witnesses' credibility. We disagree.
 {¶ 9} We first set forth the standard of review for appeals from the Commission. The trial court must affirm the Commission's decision if the court finds that there is reliable, probative, and substantial evidence in the record to support the decision. R.C. 4112.06(E); Plumbers Steamfitters Comm. v. Ohio Civ.Rights Comm. (1981), 66 Ohio St.2d 192, paragraph two of the syllabus.
 {¶ 10} Our review of the trial court's judgment is more limited. We may reverse a determination of the court of common pleas only upon a showing that the court of common pleas abused its discretion. Ohio Civ. Rights Comm. v. Case W. Res. Univ.
(1996), 76 Ohio St.3d 168, 177, citing Cleveland Civ. Serv.Comm. v. Ohio Civ. Rights Comm. (1991), 57 Ohio St.3d 62, 65. See, also, Lorain City Bd. of Edn. v. State Emp. Relations Bd.
(1988), 40 Ohio St.3d 257, 260-261. "Absent an abuse of discretion, an appellate court will not disturb the trial court's determination." Yeager v. Ohio Civ. Rights Comm.,148 Ohio App.3d 459, 2002-Ohio-3383, at ¶ 12. An abuse of discretion connotes more that an error of law or judgment; rather, it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} This Court emphasizes that the facts of this case are voluminous, as evidenced by the transcript which exceeded 1500 pages. Caddell and Thornton were employed as burr filers by ABS, which meant they remove sharp metal burrs from wheels, brakes and other parts. ABS is a large manufacturing facility which manufactures wheels and brakes for commercial, military and other aircraft. Both men had been employed by ABS for nearly twenty years. On February 15, 2000, Thornton was close to ending his shift when he placed two DC-9 wheels at his workstation to work on when he came in for his next shift on February 16. Thornton testified that employees were expected to complete four DC-9 wheels in an eight-hour shift or they would be considered to have not made their quota in productivity and their overtime could be cancelled.
 {¶ 12} Caddell started his shift at 3:00 a.m. on February 16. He retrieved four wheels from the production machine for his shift. Another employee, Tony Stavropulos, arrived for work at 5:00 a.m. and asked Caddell if there were any more wheels available. Caddell told him there was one more on the production machine, which Stavropulous retrieved and finished. After completing the wheel, Stavropulos asked Mike Rubino, the area supervisor, what he should work on next. Rubino instructed Stavropulos to take the wheels from Thornton's workstation.
 {¶ 13} When Thornton arrived at 11:00 a.m. for his shift on February 16, he noticed the two wheels at his workstation were gone. He stated that it was important for an employee to have work ready to go when starting a shift, so he took a wheel from Caddell's workstation while Caddell was at lunch so the area manager, Mike Rubino, would see that he had work to do. When Thornton took the wheel from Caddell's workstation, Caddell was still on the plant floor, but about to leave for lunch. He saw Thornton take the wheel, but did not say anything at the time.
 {¶ 14} After returning with his lunch, Caddell went to Thornton's workstation to retrieve the wheel. As the two men passed each other on the plant floor, Thornton testified that the two men exchanged profanity when talking about whether or not Caddell took Thornton's wheel. Caddell told Thornton that he did not take the wheel, but that Mike Rubino had given it to Tony Stavropulos. Caddell then picked up the wheel, which was approximately 18 inches in both height and diameter, and 45 pounds, from Thornton's workstation and hoisted it on his shoulder. Thornton followed him to explain that the reason he took the wheel from Caddell's workstation was so that he would have something at his own work area so Mr. Rubino would see that he was working on something.
 {¶ 15} Caddell put the wheel on his shoulder and turned around without knowing that Thornton was directly behind him in close proximity. As he turned around, Caddell bumped into Thornton and the wheel made contact with Thornton's face, causing a small scratch on his cheek underneath his left eye. At the hearing, Thornton testified that he did not think Caddell injured him on purpose, and stated that he knew their contact was accidental when Caddell turned around with the wheel on his shoulder and did not realize Thornton was standing behind him. Thornton used more profanity after the wheel touched his face, but stated that he "thought nothing of the incident" and that he and Caddell each went their separate ways after the accident with no further provocation. Caddell testified that after he bumped into Thornton, he put the wheel back at his workstation and went to find Mike Rubino to speak to him about making sure that employees were given something to work on at the start of their shifts, and to complain about Rubino taking work from one employee to give to another without providing other work in its place. Rubino was not in the production office, but Caddell spoke to two other members of ABS' production team. Caddell voiced his concerns about how employees should have work to do when they start their shift, and then he said that he had a "run-in" with Thornton and that they had "bumped" into one another.
 {¶ 16} ABS maintains a zero tolerance policy that prohibits employees from engaging in workplace violence. The posted language involving inappropriate behavior states:
"The Company will not tolerate acts of threatening, intimidating or violent behavior. Any employee who is involved in such behavior, regardless of length of service or prior work record, will be subject to disciplinary action, up to and including termination, for such an offense, including the first offense."
 {¶ 17} Mike Rubino returned from lunch shortly after Caddell had talked to the ABS production team members and Caddell explained that he and Thornton had bumped into each other as Caddell turned around holding the wheel. Rubino went to Thornton's workstation and requested that he come to his office, where another manager was present. Rubino stated to Thornton that he was suspending him for just cause, which was having physical contact with another employee, and asked him to turn in his security badge. Thornton then asked Rubino if he was going to be the only one suspended and he showed Rubino the scratch on his cheek, which was approximately 1/8 of an inch and was not bleeding. Thornton testified that he was reluctant to tell Rubino who else was involved in the accident because he did not want it blown out of proportion. After Thornton told Rubino it was Caddell who had been holding the wheel, Rubino sent him to the nurse to have the scratch looked at. Thornton testified he walked to the nurse's station without dizziness or any other effects of the injury, and the nurse, Patricia Porpora, asked him what happened. Thornton told her he did not want to talk about it, and she proceeded to clean the scratch on his cheek with peroxide. She again asked him if he was struck on purpose, but Thornton told her he did not want to say anything. Thornton testified the scratch was not bleeding, did not require a Band-Aid, and Porpora gave him an ice pack to put on it, although there was no swelling. Before he left, Thornton did tell Porpora that Caddell was the one who struck him with the wheel.
 {¶ 18} Rubino called Caddell to his office, where he suspended Caddell for violating the workplace policy and requested his security badge. Caddell then talked with the union steward. Both Caddell and the union steward went back to Rubino's office, where Rubino again told Caddell that he was suspended. Caddell then turned in his parking pass and went to his union hall to talk with Robert Krunich, chairman of the union's bargaining committee. Thornton was already at the union hall following his suspension and talking with Krunich, who spoke to each man separately, and then together.
 {¶ 19} Krunich testified that after talking with both men, they also talked to Tony Stavropulous, who confirmed the series of events and characterized them as accidental, as Caddell and Thornton explained them. Krunich stated that "We still didn't think there was going to be much of a situation behind this because we thought it was just a misunderstanding[.]" Thornton and Caddell were suspended beginning February 16, 2000, which eventually turned into a termination.
 {¶ 20} In June 2000, the United Auto Workers Local 586, on behalf of both men, presented claims of unjust termination to a local arbitrator. In October 2000, the federal arbitrator's decision reflected that the contact between both men was "probably accidenta[l]" but found that there was "some degree of an offense against violence in the workplace. Thus, some discipline is warranted." The arbitrator reinstated both men on October 23, 2000, without back pay, seniority or benefits during the time of suspension.
 {¶ 21} Even though the Ohio Supreme Court has previously addressed the issue of instances where there is one hearing officer who conducted a hearing and observed testimony and a separate finder of fact, we note that ABS is asking us to make a decision not based on any precedent from this Court. In Laughlinv. Pub. Util. Comm. (1966), 6 Ohio St.2d 110, the Ohio Supreme Court stated:
"Appellants contend they were denied a fair hearing and deprived of due process of law by the commissioner's assignment of an attorney examiner to prepare findings and recommendations, who had not presided at the hearings. This contention is without merit. It is not essential that a person who prepares findings and recommendations in an administrative proceeding hears the evidence, if he reviews and examines the record of the proceeding." Id. at 111-112.
 {¶ 22} ABS argues that Laughlin does not apply in this case because Laughlin did not involve issues of witness credibility, and contends that when credibility is determinative of a material issue, due process requires the fact-finder to personally observe witness testimony.
 {¶ 23} In Ritchie Photographic v. Limbach (1994),71 Ohio St.3d 440, the Ohio Supreme Court was presented with the issue of having an individual render a decision who was not the same person who conducted the hearing. In Ritchie, Mr. Ritchie argued that it was a due process violation because the Board of Tax Appeals replaced the attorney-examiner who had conducted the evidentiary hearing with another attorney-examiner who worked from a "cold record" to decide whether or not the Tax Commissioner's assessment was proper. Id. at 441. The Court rejected this argument, citing its previous holding in Laughlin
as support.
 {¶ 24} The Tenth District Court of Appeals was also faced with the argument of whether or not a second trier of fact could assess credibility in Halleen Chevrolet, Inc. v. General MotorsCorp. (June 28, 2001), 10th Dist. No. 00AP-1454. The Court concluded:
"Halleen contends that Laughlin and Ritchie are distinguishable from the present case because neither involved disputes as to the credibility of witnesses and both were based entirely upon a question of law. However, neither Laughlin norRitchie specifically limited their respective holdings to situations where only legal questions are involved, or where credibility is not at issue." Id. at 3.
 {¶ 25} This Court agrees with the analysis of the Halleen
Court, and finds that the credibility distinction ABS raises is unpersuasive. In addition to the holdings of Laughlin andRitchie not being limited to only legal questions or where credibility was not at issue, the facts of this instant case demonstrate that it was not impossible for the second ALJ to determine credibility from her review of the transcript and record. ALJ Johnson could have assessed credibility from her review of the record and facts, and from the inconsistencies in the facts not in dispute.
 {¶ 26} Furthermore, Ed Searle, Vice President of Human Resources, who provided testimony regarding ABS' prior cases involving non-African American employees, was not an eyewitness to any of these prior incidents. Mr. Searle was not testifying as to incidents he had personally witnessed, but merely testifying about facts which were reported to him, and therefore credibility was not an issue for such testimony. This Court is unable to agree with ABS' argument that because the second ALJ did not personally observe a witness' testimony, she was unable to successfully assess someone's credibility, as it discounts the argument that there are numerous ways to make credibility determinations other than by personal observation. Therefore, we cannot find that the trial court abused its discretion in affirming ALJ Johnson's findings.
 {¶ 27} In support of its argument that "the one who decides must hear," ABS cited two Ohio Workers' Compensation cases. However, these cases are easily distinguishable from the present case and we find ABS' arguments unconvincing. In State exrel.Ormet Corp v. Industrial Comm. (1990), 54 Ohio St.3d 102, the decision maker did not attend the hearing, no transcript of the hearing was prepared, no summary or report of the hearing was prepared, and the decision maker did not meet with any of the other commissioners regarding the claimant's application. TheOrmet Court concluded, "[T]he decision maker must, in somemeaningful manner, consider evidence obtained at the hearing. * * * It is thus undisputed that [the hearing officer] did not inany manner consider any evidence presented at the hearing." Id. at 107. The Ormet Court found that a violation of due process ensued when the decision maker did not consider evidence presented at the hearing in some meaningful manner.
 {¶ 28} The Ormet Court referred to Morgan v. UnitedStates (1936), 298 U.S. 468, 80 L.Ed. 1288 ("Morgan I"), which the Ormet Appellees had cited for support, and which ABS also cites in its brief for support of its argument that "the one who decides must hear." In Ormet, the Court stated: "Appellee urges us to construe narrowly the requirement that `the one who decides must hear,' and argues that Morgan I is satisfied only by personal attendance at a hearing or review of the transcript. We disagree." Id. at 104. This Court concurs with the Ormet Court, and will not narrowly construe this requirement. We find that ALJ Johnson made a thorough review of the evidence at hand, as evidenced by her frequent references to the transcripts, thereby meeting the instruction of the Ormet court to consider the evidence from the hearing in a meaningful manner.
 {¶ 29} In State, ex rel. Owens-Illinois v. Indus. Comm.
(1991), 61 Ohio St.3d 456, an individual argued that it was denial of his Due Process when he was denied the opportunity for an oral hearing to rebut the commission's rehabilitation report. The Court referenced the Ormet decision and stated:
"[W]e held that a party had been sufficiently `heard' for due-process purposes when the decision maker `in some meaningful manner, consider[ed] evidence obtained at [a] hearing.' Thus, a comissioner's review of a hearing transcript in lieu of live testimony satisfied a party's right to be `heard.'" (Internal citations omitted.) Id. at 458.
 {¶ 30} Therefore, we cannot find that the trial court abused its discretion when it found that ALJ Johnson's decision was proper. The trial court cited Laughlin in support of its finding that it was not improper for the Commission to permit a successor ALJ to issue a decision. This Court believes that trial court had reliable, probative, and substantial evidence in the record to support ALJ Johnson's decision, and thus we cannot find that the trial court's judgment is unreasonable, arbitrary, or unconscionable.
 {¶ 31} ABS first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"The Trial Court erred in denying Aircraft Braking Systems Corporation's Motion for Summary Judgment."
 {¶ 32} In their third assignment of error, ABS asserts that the trial court erred when it denied their motion for summary judgment. ABS contends that because their motion for summary judgment was based on "procedural deficiencies" and did not require a determination on any material facts, ABS was entitled to summary judgment so long as it was entitled to judgment as a matter of law. We disagree.
 {¶ 33} Appellate courts consider an appeal from summary judgment under a de novo standard of review. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Unlike an abuse of discretion standard, a de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts of the case in a light most favorable to the non-moving party. Civ.R. 56(C); Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2.
 {¶ 34} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 35} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Civ.R. 56(E) provides that after the moving party has satisfied its burden of supporting its motion for summary judgment, the non-moving party may overcome summary judgment by demonstrating that a genuine issue exists to be litigated for trial. State ex rel. Zimmermanv. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 36} The trial court denied ABS' motion for summary judgment on the basis of the Laughlin decision. In their brief, ABS reiterated the argument that ALJ Johnson should not have issued her decision in favor of the Commission without having observed witness testimony. Based on our discussion of the first two assignments of error, this Court finds this assignment of error to be without merit. Viewing the facts of the case in the light most favorable to the non-moving party, we find that the trial court's decision to deny ABS' motion for summary judgment was proper.
 {¶ 37} ABS' three assignments of error are overruled and the decision of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J. Moore, J. concur.