[Cite as *Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778.]

[Please see original opinion at 2011-Ohio-1917.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 94214**

# SHARON JOHNSON, PH.D.

PLAINTIFF-APPELLANT

vs.

# CLEVELAND CITY SCHOOL DIST., ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-684948

**BEFORE:** Jones, J., Kilbane, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** June 9, 2011

**ATTORNEYS FOR APPELLANT**

Edward L. Gilbert
Tracee D. Hilton-Rorar
Edward L. Gilbert Co., LPA
One Cascade Plaza
Suite 825
Akron, Ohio 44308


**ATTORNEYS FOR APPELLEES**

William Michael Hanna
Tara A. Aschenbrand
Susan M. Dimickle
Squire, Sanders & Dempsey, LLP
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215


ON RECONSIDERATION[1]

LARRY A. JONES, J.:

{¶ 1} Plaintiff-appellant, Sharon Johnson, Ph.D., appeals the trial court's judgment granting summary judgment in favor of defendants-appellees the Cleveland City School District, Sharon McDonald, Donna Bowen, and Clinton Faulkner (collectively appellees or the "district").

---

[1]The original announcement of decision, *Johnson, Ph.D. v. Cleveland City School Dist., et al.*, Cuyahoga App. No. 94214, 2011-Ohio-1917, released April 21, 2011, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. See App.R. 22(C); see, also, S.Ct.Prac.R. 2.2(A)(1).

We reverse and remand.

## I. Procedural History and Facts

### A. Procedural History

{¶ 2}   In May 2007, Johnson filed a complaint against the district in federal court. In that case, Johnson alleged that she was fired from her position with the district in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA") and in violation of Chapter 4112 of the Ohio Revised Code. Johnson also asserted claims for breach of contract and intentional infliction of emotional distress.

{¶ 3}   The district court granted appellee's motion for partial summary judgment on the breach of contract claim. After discovery, appellees filed another motion for summary judgment on the remainder of the claims. The district court granted the motion as it related to the federal claims, but declined to "exercise pendant jurisdiction over the remaining state claims." The district stated that "[n]othing in this Memorandum Opinion and Order should be construed to prevent Dr. Johnson from re-filing her state claims in an appropriate Ohio court to the extent such claims are permitted under Ohio law." Johnson appealed.

{¶ 4}   In February 2009, while her federal appeal was pending, Johnson filed this action against the district alleging "multiple violations of 4112 of the Ohio Revised Code." She also asserted a claim for the intentional infliction of emotional distress.[2]

---

[2]The district filed a motion for judgment on the pleadings relative to the intentional infliction of emotional distress claim, and the trial court granted the motion.

{¶ 5} In August 2009, the Sixth Circuit Court of Appeals held that the district court improperly limited the following claims because Johnson had exhausted the administrative proceedings: (1) failure to accommodate; (2) retaliatory denial of accommodations; and (3) discriminatory discharge. The Circuit Court reversed and remanded in part.

{¶ 6} In September 2009, defendants filed a motion for summary judgment in this case, which Johnson opposed. In October 2009, the trial court summarily granted the district's motion.

{¶ 7} In February 2010, the federal district court granted appellees' motion for summary judgment.

## B. Facts

{¶ 8} Johnson began her employment as a school teacher with the district in 1989. Approximately a year prior to her employment with the district, Johnson was involved in an automobile accident and as a result was diagnosed with cervical myelopathy. The condition resembles the effects of a stroke or multiple sclerosis: if Johnson overexerts herself, her breathing becomes labored, she feels faint, her arm will "curl up," her legs become weak, and her muscles become fatigued.

{¶ 9} In 1993, Johnson's conditioned worsened to the point where she had difficulty walking, ascending stairs, and performing "activities of daily living." In August 2002, Johnson requested a "special transfer" to an area of administration with a handicapped facility. Dr. Patrick Bray, an occupational medicine specialist, was retained by the district to evaluate Johnson.

{¶ 10} In a September 12, 2002 letter, Dr. Bray described Johnson's case as "fairly complex and unusual," and opined that she suffered from a "disability covered by the Americans With Disabilities Act (ADA)." Bray further opined that Johnson's "ADA-covered disability does pose a direct threat of harm" to her. He concluded that:

> "The district may remove this threat with reasonable accommodations such as the following: "[(1)] no standing for more than one hour per day[;] [(2)] no continuous speaking[;] [(3)] alternate sitting, standing and walking[;] [(4)] minimal stairs[;] [and (5)] use of ambulatory aids such as a cane, and under extreme circumstances, an[ ]electrical scooter as needed."

{¶ 11} Johnson's transfer request was granted, and in 2004, the district assigned her to Adlai Stevenson Elementary School under principal Susan Hawthorne-Clay. Hawthorne-Clay gave the following responsibilities to Johnson: (1) assisting a special needs teacher; (2) tutoring groups of eight to 10 students; and (3) filling in on "whatever was needed." Johnson was given the title "academic interventionist" while at Adlai Stevenson.

{¶ 12} In the fall of 2005, principal Hawthorne-Clay transferred to Robert H. Jamison School and requested that Johnson transfer with her. The district allowed the transfer, and Johnson did grant writing, parent interventions, and supervision of the administrative office in Hawthorne-Clay's absence.

{¶ 13} In the beginning of the 2006-2007 school year, appellee Sharon McDonald, a district administrator, visited Robert H. Jamison School and met Johnson for the first time. Johnson told McDonald that she held small reading groups and helped principal Hawthorne-Clay with discipline

at times.  According to Johnson, McDonald told her that she would be returning to classroom teaching, and would be assigned to a classroom on the second floor.[3]  Johnson told McDonald of her medical restrictions, but McDonald insisted on the reassignment, despite the restrictions and the fact that the school's elevator was non-functional.

{¶ 14} After her visit to the school, McDonald met with other administrators from the district, specifically appellees Faulkner and Bowen.  They reviewed Johnson's personnel file, including the 2002 statement from Dr. Bray with the listed restrictions, and discussed the restrictions and accommodations.

{¶ 15} The district thereafter met with Johnson and her union representative.  Appellee Faulkner stated that he had reviewed Dr. Bray's report and believed that Johnson could work in a classroom.  Johnson said that she had a "classroom exemption."  Appellee Faulkner told Johnson that the district expected her to be a classroom teacher.

{¶ 16} Johnson filed a union grievance.  As part of the resolution of the grievance, Johnson was promised that she would be "provided support via an additional teacher and grade level staff person."  Further, the school's elevator was supposed to be fixed and Johnson was to have a key to the elevator.

{¶ 17} In a September 5, 2006 letter from principal Hawthorne-Clay to Johnson, Hawthorne-Clay informed Johnson that her assignment at Robert H. Jamison School had been

---

[3]The class was being taught by a substitute teacher at the time.

changed "to assume the open 8th grade English-language arts position, per Ms. Sharon McDonald." Johnson reported to the English language arts class on September 7.

{¶ 18} District administrators visited the class on September 8. The substitute teacher was in the front of the class and Johnson was in the back of the room working with a small group of students. The administrators spoke to Johnson in the hall. Johnson complained about having to climb the stairs and the temperature of the classroom, i.e., it was too hot. According to Johnson, McDonald told her, "[e]nough, you're going to teach this classroom," and that the substitute teacher was going to be reassigned. Johnson felt overwhelmed by heat and stress and left that day; she did not return to the school until January 8, 2007.

{¶ 19} In September 2006, Johnson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging a violation of her ADA rights.

{¶ 20} In late October 2006, Johnson submitted to the district a leave of absence form with a letter from a Dr. Laura Shoemaker, which stated that Johnson was under her care and that she was unable to attend work "from September 8, 2006, until the resolution of her job requirements in accordance with her ADA restrictions."

{¶ 21} In December 2006, the Civil Rights Commission issued a no probable cause ruling on Johnson's EEOC complaint. The district thereafter denied Johnson's request for leave and informed her that she was to report to her classroom assignment at Robert H. Jamison on January 8, 2007, and Johnson did. Johnson testified that the second-floor classroom was "sauna like," and

she was without assistance to escort her students up and down the stairs. She felt physically unable to perform, and left. Johnson remained off work until February 8, 2007, and used accumulated sick time for her leave.

{¶ 22} On January 9, 2007, the day after she left, Johnson requested a "fitness for duty" examination. Pursuant to the request, Johnson had another examination with Dr. Bray. In a February 2007 report, Dr. Bray opined as follows:

"1. Dr. Johnson does presently suffer from a disability covered by the Americans With Disabilities Act (ADA). I want to say once again that this case is complex and unusual. However, I haven't the slightest doubt that her disability is appropriately covered by the ADA.

"2. This ADA-covered disability does pose a direct threat of harm primarily to Dr. Johnson."

{¶ 23} Bray concluded that Johnson could be reasonably accommodated with the same restrictions he provided in his September 2002 report, with the addition of "[n]o work environment with extreme heat, humidity, or cold temperatures; [and] [s]he should not be required to verbally control resistant students that persists after an initial warning[.]" The doctor explained that the last restriction was a "refinement of my previous recommendation that [Johnson] not engage in continuous speaking."

{¶ 24} According to Dr. Bray, Johnson's "disability is permanent in nature." But he noted that "her physical limitations tend to vary, [and] she is certainly capable of being gainfully

employed within the accommodations mentioned above."[4]

{¶ 25} In May 2007, Johnson and district officials met. By this time, Johnson had obtained a guidance license, and she brought documentation of that to the meeting and expressed interest in a guidance counselor position. She also brought documentation to show that she could be placed as a reading specialist or an administrator. Johnson testified that she obtained her guidance license specifically as a means to resolve her restrictions. During the meeting, Johnson also assured the district officials that she could maintain discipline even given her speaking restriction.

{¶ 26} In a July 2007 letter to Johnson, the district informed her that it was "willing to continue to engage in the interactive process with [her,]" but that her speaking restriction was "problematic." The district concluded that the request for a speaking restriction was not reasonable and that it was therefore unable to accommodate it.

{¶ 27} In a July 2007 letter, dated the day after the district's letter, Johnson reiterated her ability to maintain discipline with her speaking restriction. She further expressed her interest in being a guidance counselor, and stated that she had applied for a guidance counselor position in the district in the spring of 2007.

---

[4]Johnson also submitted the reports from two Cleveland Clinic doctors in opposition to the district's summary judgment motion. A January 2007 report concluded that Johnson "suffers from a disability covered by the Americans with Disabilities Act[, and that the disability] does pose direct threat of harm" to her. The report also described the disability as "permanent in nature," and suggested the same restrictions as Dr. Bray's February 2007 report, with the exception the speaking restriction.

An April 27, 2007 report also described Johnson's disability as "permanent," and suggested the same restrictions as Dr. Bray.

{¶ 28} On Friday, August 17, 2007, appellee Bowen called Johnson and told her that there were three open teaching positions. Johnson expressed concern as to whether any of the positions were consistent with her restrictions and reminded Bowen that she had applied for a guidance counselor position. However, according to Johnson, she accepted one of the positions.

{¶ 29} A short time later that same day, Bowen called Johnson again and told her that she needed to provide that district with medical certification regarding her ability to work. According to Johnson, Bowen told her that the position she had just accepted was outside of her restrictions and so she needed certification that the restrictions had been removed. According to the district, certification is required whenever an employee is returning from leave and the request was the district's standard procedure.

{¶ 30} The district terminated Johnson in a letter dated August 21, 2007 (Tuesday). The letter stated that Johnson "declined the position without speaking to [her] physician[,]" and that it had no positions available to accommodate her restrictions. Johnson denied declining the position and, in fact, it was her understanding that Bowen was going to call her on Monday, August, 20 to discuss the situation further. Bowen never called and the next communication Johnson received from the district was the termination letter.

{¶ 31} In this appeal from the trial court's judgment summarily granting the district's summary judgment motion, Johnson raises the following two assignments of error for our review:

> "[I.] The trial court's Judgment Entry granting summary judgment is insufficient as a matter of law.

"[II.] The trial court erred when it granted summary judgment when appellant established a prima facie case pursuant to Chapter 4112 of the Revised Code and established the evidence viewed in the light most favorable to appellant demonstrated that genuine issues of fact remained to be litigated."

## II. Law and Analysis

### A. Sufficiency of Trial Court's Judgment

{¶ 32} For her first assigned error, Johnson contends that the trial court's judgment, which summarily granted the district's summary judgment motion without explanation, is insufficient as a matter of law. We disagree.

{¶ 33} Providing a basis for summary judgment is helpful, but the failure to do so does not constitute reversible error. *Steel Valley Bank, N.A. v. Tuckosh*, Harrison App. Nos. 04 HA 566 and 04 HA 567, 2004-Ohio-4907, ¶14, citing *Scassa v. Dye*, Carroll App. No. 02CA 779, 2003-Ohio- 3480. Our review of a judgment granting summary judgment is de novo and, therefore, regardless of any reasons stated by the trial court for granting summary judgment, we conduct an independent review of the record and law. Thus, the trial court's judgment summarily granting summary judgment in favor of the district is sufficient as a matter of law for our review.

{¶ 34} Accordingly, the first assignment of error is overruled.

### B. Res Judicata

{¶ 35} The district contends that Johnson was barred from relitigating her claims in state court because of the federal court findings. We disagree.

{¶ 36} The doctrine of res judicata can be divided into two subparts: claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226. Under claim preclusion, a party who prevails in one action is precluded from relitigating the same cause of action against the same party. Id. at syllabus. Under issue preclusion, also known as collateral estoppel, the party is precluded from relitigating in a second action an issue that has been actually and necessarily litigated and determined in a prior action. *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 1998-Ohio-435, 692 N.E.2d 140, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 254 N.E.2d 10.

### Claim Preclusion

{¶ 37} In regard to the application of res judicata between state court and federal court, this court has held as follows:

> "It is well settled that when a judgment is rendered by a federal court acting under its federal question jurisdiction, the availability of a res judicata defense depends on the federal-law standard." *Powell v. Doyle* (Oct. 8, 1998), Cuyahoga App. No. 72900, citing *Apparel Art Intern., Inc. v. Amertex Enterprises Ltd.* (C.A.1, 1995), 48 F.3d 576; *Kale v. Combined Ins. Co. of America* (C.A.1, 1990), 924 F.2d 1161; *Cemer v. Marathon Oil Co.* (C.A.6, 1978), 583 F.2d 830.

{¶ 38} In order for a claim to be res judicata under federal law, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits. *Powell*, citing *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York* (C.A.7, 1997), 112 F.3d 257; *Barnett v. Stern* (C.A.7, 1990), 909 F.2d 973; *Kale*, supra.

**{¶ 39}** We find that there was no final judgment on the merits in the federal action as to the state claims. In *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. Lakewood* (1984), 20 Ohio App.3d 338, 486 N.E.2d 194, this court cited *Harper Plastics, Inc. v. Amco Chem. Corp.* (C.A.7, 1981), 657 F.2d 939, in addressing the doctrine of res judicata vis-a-vis actions in state and federal court. In *Harper Plastics*, the Seventh Circuit Court of Appeals held that where a plaintiff filed a federal suit alleging that the defendant violated a federal statute, that plaintiff could not subsequently bring an action in state court alleging violation of state contract laws. The Seventh Circuit reasoned that both cases were based on the same physical actions taken by the defendant, and that there was not a second cause of action merely because recovery was sought under different laws.

**{¶ 40}** The Seventh Circuit further held, however, that the plaintiff could have joined the state claim in federal court, and that res judicata is not only a bar to litigation of matters that were raised, but also to matters that should have been raised, in a prior proceeding.

**{¶ 41}** In *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc.*, the plaintiff filed an action in state court against the defendant regarding the constitutionality of a zoning ordinance, as applied under the United States Constitution. While the case was still pending in state court, the plaintiff filed an action in federal court. A trial was held in federal court, and the constitutionality of the ordinance was upheld. The plaintiff then sought to amend its complaint in the state court action, so that it could delete all references to the United States Constitution and substitute the

name of the new building commissioner for the one previously named. The trial court denied the motion.

{¶ 42} This court affirmed, but relying on *Harper Plastics*, stated the following:

"Unless it is clear that the federal court would have declined as a matter of its discretion to exercise jurisdiction over the state claim, that state action is barred in subsequent suits. Restatement of Law 2d, Judgments (1982) 316, 87a, Illustration 1. The [plaintiff] has not provided proof that it brought the state claim to the federal court's attention, nor has it shown that the federal court would have declined to exercise jurisdiction over the state claim." *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc.* at 340.

{¶ 43} Here, Johnson *did* assert her state claims in the federal action, and the federal court *did* specifically decline to exercise jurisdiction over them. In light of *Harper Plastics* and *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc.*, therefore, her claims were not barred by res judicata under the claim preclusion portion of the doctrine.

### Issue Preclusion and Collateral Estoppel

{¶ 44} In order to prevail under the doctrine of collateral estoppel, a party must plead and prove the following: (1) the party against whom estoppel is sought was a party or in privity with a party to the previous case; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the previous case. *Balboa Ins. Co. v. S.S.D. Distrib. Sys., Inc.* (1996), 109 Ohio App.3d 523, 527-28, 672 N.E.2d 718.

{¶ 45} Johnson filed her state claims in the common pleas court in February 2009, after the

district court's judgment, but before the Sixth Circuit Court of Appeals had issued its decision. In August 2009, the Sixth Circuit reversed the district court's decision in part and remanded the case for further proceedings. Thus, at that point, proceedings were pending in both federal and state trial courts.

{¶ 46} In October 2009, the common pleas court summarily entered judgment for the district on all of Johnson's claims and this appeal resulted. In February 2010, while this appeal was pending, the federal district court granted summary judgment in favor of the district on all claims.

{¶ 47} Given the procedural history of this case, there was no "final judgment" and therefore collateral estoppel did not bar this action. Specifically, Johnson filed this action while her federal claims were still pending. "'An action or suit is "pending" from its inception until the rendition of final judgment.'" *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 103, 522 N.E.2d 489, quoting Black's Law Dictionary (5th Ed.1979) 1021. See, also, *Ex Parte Craig* (C.A.2, 1921), 274 F. 177, 187 (cause is pending while still open to appeal, modification, or rehearing, and until final judgment is rendered); *Wigton v. Lavender* (1984), 9 Ohio St.3d 40, 43, 457 N.E.2d 1172 (a judgment is not final until the time for appeal has expired and the judgment is not appealed).

{¶ 48} We note this court's decision in *Cully v. Lutheran Med. Ctr.* (1987), 37 Ohio App.3d 64, 523 N.E.2d 531. In *Cully*, this court held that the pendency of an appeal of a

judgment does not prevent the application of the doctrine of res judicata in a subsequent action. But in *Cully*, unlike here, the plaintiff did not raise her state claims in her federal action. This court held that the plaintiff's state action was barred as res judicata because they could have been adjudicated in her federal action. *Cully* differs from this case because Johnson attempted to litigate her state claims in her federal action, but the federal court declined jurisdiction over them.

{¶ 49} We likewise find this court's decisions in *Ferrante v. Peters*, Cuyahoga App. No. 90427, 2008-Ohio-3799, and *Gwen v. Regional Transit Auth.*, Cuyahoga App. No. 82920, 2004-Ohio-628, distinguishable from this case. In *Ferrante*, the plaintiff filed her action, which alleged federal and state law claims, against the defendants in state court. The defendants removed the case to federal court. The federal court granted summary judgment in favor of the defendants on the plaintiff's federal claim only and declined to exercise jurisdiction over the state claims.

{¶ 50} The plaintiff appealed the federal court's decision. The Sixth Circuit Court of Appeals upheld the district's judgment. Then, *after* the appeal was concluded, the case was remanded to state court where the defendants moved for summary judgment, contending that the "law of the case" disposed of the plaintiff's state claims. The trial court granted the defendants' motion. The procedural posture of *Ferrante* vis-á-vis this case distinguishes the two.

{¶ 51} The procedural history of *Gwen* also distinguishes it from this case. There, the plaintiff filed an action in federal court alleging claims under both federal and state law. The district court granted the defendant's motion for summary judgment on the federal claims and

dismissed the state claims without prejudice. The plaintiff appealed; the district court's judgment was upheld. The plaintiff filed an action in state court. There is no indication that the federal appeal was pending at the time the state action was commenced. That, coupled with the district court's lack of statement expressly declining jurisdiction over the state claims, distinguishes *Gwen* from this case.

{¶ 52} In light of the above, we find that Johnson's case was not barred under either the claim preclusion or issue preclusion portions of the doctrine of res judicata.

## C. Summary Judgment Standard

{¶ 53} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶12. Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶9, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio

St.2d 317, 327, 364 N.E.2d 267.

### D. Disability Discrimination

**{¶ 54}** To succeed on her disability discrimination, Johnson had to show the following: (1) that she was disabled; (2) that her employer was aware of the disability; and (3) that she was an otherwise qualified individual with a disability in that she satisfied the prerequisites for the position and could perform the essential functions of the job with or without accommodation. *Plantz v. Cincinnati* (2002), 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073, ¶13. Ohio's handicap-discrimination law was modeled after the federal ADA and, therefore, Ohio courts may seek guidance when interpreting the Ohio handicap-discrimination statute from regulations and cases that interpret the ADA. *Plantz* at id.

**{¶ 55}** R.C. 4112.01(A)(13) defines disability as:

> "[1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; or [3] being regarded as having a physical or mental impairment."

**{¶ 56}** In its motion for summary judgment, the district contended that "[t]here is no evidence whatsoever that any of the claimed 'restrictions' substantially limit one or more life activities as required under the federal and state anti-discrimination statutes." We disagree. Dr. Bray, who was the physician chosen by the district to examine Johnson, *twice* concluded that Johnson's case was "fairly complex and unusual," she suffered from a "disability" under the ADA,

and her disability posed a "direct threat of harm" to her.

{¶ 57} The district further contend in its summary judgment motion that "physician statements asserting someone is 'disabled' does not determine whether, in fact, an individual is disabled under the anti-discrimination laws." That may be true. But such statements can create a genuine issue of material fact. As the district aptly notes, "the determination of whether an impairment substantially limits one or more of an individual's major life activities is an individualized inquiry." District's summary judgment motion, p. 18, citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, (2002), 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615.

{¶ 58} In addition to Dr. Bray's conclusions, evidence exists from two other doctors that Johnson is "disabled," the "disability is permanent," and the "disability poses a direct threat of harm" to her. Further, other evidence in the record also creates a genuine issue of fact as to whether Johnson was disbaled. For example, Lona Howell, a human resource manager for the district, testified that she "became satisfied that Dr. Johnson had an ADA illness that required some accommodation." Howell deposition at 32. On this record, we find that a genuine issue of material fact exists as to whether Johnson was disabled.

{¶ 59} The record is clear that the district was well aware of Johnson's circumstance, the second element of a failure to accommodate claim. In regard to the third element, whether she was a qualified individual with a disability, the district contended that she was not qualified because of the speaking restriction. Other than its bare assertion, the district did not submit any evidence that

Johnson was unable to maintain classroom control because of her speaking limitation.[5]

{¶ 60} In opposition to the district's motion, Johnson presented evaluations from various principals under whom she served, showing mostly "excellent" ratings. Admittedly, some of the evaluations did not account for "classroom atmosphere" or "classroom control" because Johnson did not always serve as a classroom teacher. But of the ten that did evaluate those areas, she received "excellent" ratings with three exceptions, in which she received "good" ratings. On this record, a genuine issue of material fact exists as to whether Johnson was a qualified individual with a disability.

{¶ 61} In light of the above, the trial court erred in granting the district's summary judgment motion on Johnson's disability discrimination claim.

### E. Reasonable Accommodation

{¶ 62} A plaintiff who has established that he is disabled for R.C. 4112.02 purposes may further establish a discrimination claim by showing that the employer has declined to make a reasonable accommodation to known disabilities if such accommodation would not cause undue hardship on the employer. "'The disabled individual bears the initial burden of proposing an accommodation and showing that [the] accommodation is objectively reasonable.'" *McDonald v. Ford Motor Co.* (N.D.Ohio 2002), 208 F.Supp.2d 837, 842, quoting *Vande Zande v. State of*

---

[5]The district seemed to rely on the doctors' restrictions about Johnson's speaking. Those restrictions in and of themselves, however, do not equate to Johnson being unable to control a classroom or group of students.

*Wisconsin Dept. of Admin.* (C.A.7, 1995), 44 F.3d 538. "Once a prima facie case of discrimination is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. The reasonableness of an accommodation is determined on a case-by-case basis." *Franks v. Natl. Lime & Stone Co.* (2000), 138 Ohio App.3d 124, 131, 740 N.E.2d 694. This court has held that "the 'reasonableness' of an accommodation ordinarily presents a question of fact for the jury to decide." *Smith v. Dillard Dept. Stores, Inc.* (2000), 139 Ohio App.3d 525, 534, 744 N.E.2d 1198; see, also, *Johnson v. SK Tech., Inc.*, Montgomery App. No. 23522, 2010-Ohio-3449, ¶87 (Donovan, P.J., concurring in part and dissenting in part) ("Accommodation is a highly fact sensitive task, generally not suitable for summary judgment resolution.").

{¶ 63} In an August 2002 letter from Johnson to the district, Johnson requested a "special transfer" "due to medical reasons." She stated that she had cervical myelopathy and explained the condition and her resulting limitations. Further, Johnson was specific in proposed accommodations. The district contended that it reasonably accommodated Johnson and that her "rejection" of the job offered to her in August 2007 foreclosed her claim.

{¶ 64} Upon review of the record, we find a genuine issue of material fact exists as to both whether the district reasonably accommodated Johnson and whether she rejected the job offered to her in August 2007. For example, the district maintains that Johnson never applied for a guidance counselor position. Johnson testified that in when she met with district officials in May 2007, she

specifically brought documentation of her recently obtained guidance license and told the officials that a guidance counselor position, among others she suggested, would accommodate her disability.

{¶ 65} Further, Johnson specifically denied that she rejected the job offered to her in August 2007. Rather, according to Johnson, she accepted the position and at the conclusion of her conversation with appellee Bowen relative to the job, Bowen told her that she (Bowen) was going to call Johnson in a couple of days to further discuss the situation. In fact, the district's own documentation tends to support Johnson's contention. Specifically, "conversation notes" summarizing the conversation between Bowen and Johnson which were prepared by a Sonya Marshall of the district's human resources department stated:

"Dr. Johnson replied that she was not refusing [the assignment] and would accept the position at Gracemount but would discuss the matter about the violation at a later date. Ms. Bowen[ ] proceeded to give Dr. Johnson a contact number for the Principal at Gracemount."

{¶ 66} In light of the above, the trial court erred in granting the district's summary judgment motion on Johnson's failure to accommodate claim.

## F. Retaliation Claim

{¶ 67} To establish a claim of retaliation under R.C. 4112.02(I), Johnson had to show that: (1) she engaged in a protected activity; (2) her employer knew of her participation in the protected activity; (3) she suffered an adverse employment action; and (4) a causal link existed between the protected activity and the adverse action. *Wille v. Hunkar Laboratories, Inc.* (1998), 132 Ohio

App.3d 92, 107-108, 724 N.E.2d 492.

{¶ 68} The record demonstrates that Johnson engaged in a protected activity,[6] that is, requesting a reasonable accommodation, and the district knew of her participation in the protected activity. Further, she suffered an adverse employment action, i.e., termination. We find that a genuine issue of material fact remains as to whether a causal link existed between the protected activity and the adverse action. In particular, in its termination letter to Johnson, the district stated that Johnson "declined the position without speaking to [her] physician." The letter further stated that her employment with the district was terminated "[i]n light of [her] rejection of the positions offered to [her.]" As discussed, we find that a genuine issue remains as to whether Johnson rejected a position with the district. As such, the trial court erred in granting the district's summary judgment motion on Johnson's retaliation claim.

## III. Conclusion

{¶ 69} The trial court's judgment was sufficient for our review. Upon review, genuine issues of material fact exist on Johnson's discrimination claims under R.C. 4112.02. The trial court therefore erred in granting summary judgment in favor of the district on the claims.

Judgment reversed; case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[6]Filing an OCRC claim is also a protected activity. See *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.* (2001), 143 Ohio App.3d 415, 428, 758 N.E.2d 234.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS
WITH SEPARATE OPINION

COLLEEN CONWAY COONEY, J., DISSENTING:

{¶ 70} I respectfully dissent. I would affirm the grant of summary judgment.

{¶ 71} This case began in federal court when Johnson filed her complaint in May 2007 alleging disability discrimination (failure to accommodate and retaliatory discharge) in violation of the ADA and R.C. Chapter 4112.02 et seq., breach of contract, and intentional infliction of emotional distress. The district court granted summary judgment on all federal claims and dismissed the state claims without prejudice, and Johnson appealed. The U.S. Sixth Circuit Court of Appeals affirmed in part and reversed in part. It affirmed the district court's grant of summary judgment on Johnson's failure to accommodate and retaliatory termination claims. However, in addition to dismissing those claims, the Sixth Circuit found that these claims were properly

exhausted prior to being raised in the federal court complaint. The Sixth Circuit also found that a claim for retaliatory denial of accommodations reasonably arose out of the allegations made in Johnson's second Ohio Civil Rights Commission ("OCRC")/EEOC charge even though such a claim was not expressly included in the charge and was not referenced in the fact section of her charge. These three claims were remanded to the district court for further consideration.

{¶ 72} During the pendency of the appeal, Johnson filed suit in the Cuyahoga County Common Pleas Court alleging violations of Ohio's anti-discrimination law (R.C. 4112.02 et seq.) based on the same facts and issues alleged in the prior federal action. On October 27, 2009, the common pleas court granted CCSD's motion for summary judgment, dismissing all of Johnson's state law claims. Meanwhile, the district court, on remand, granted summary judgment in favor of CCSD on all of Johnson's discrimination claims. We now have the benefit of the federal court's final judgment, and therefore, I would consider its preclusive effect.

Collateral Estoppel and Res Judicata

{¶ 73} In the second assignment of error, Johnson argues the trial court erred in granting summary judgment because Johnson established a prima facie case of failure to accommodate her disability, retaliatory discharge, and discriminatory discharge. CCSD argues, in response, that because these same issues were conclusively determined in the federal district court case, Johnson's claims here are barred by the doctrines of collateral estoppel and res judicata. I agree with the CCSD argument.

{¶ 74} This court addressed this issue in *Smith v. Bd. of Cuyahoga Cty. Bd. of Commrs.*, Cuyahoga App. No. 86482, 2006-Ohio-1073.[7] In *Smith*, the plaintiff filed a complaint in the common pleas court alleging discrimination based on age and disability. Smith had already filed suit in federal court alleging disability discrimination. The county moved to strike any reference to disability discrimination in the state court case, arguing that Smith's disability discrimination claim was barred by res judicata. This court agreed explaining:

"Under the doctrine of res judicata, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim or issue arising out of the same transaction or occurrence that was the subject matter of a previous action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226. A 'transaction' is a 'common nucleus of operative facts.' Id. quoting 1 Restatement of the Law 2d, Judgments (1982), Section 24, Comment b.

"Further, it does not matter that the court which previously decided the claim is of a different jurisdiction than the court currently deciding the claim. We have said that, to the extent to which a federal court judgment operates as res judicata in the federal court, it also operates as res judicata in Ohio state courts. *Powell v. Doyle* (Oct. 8, 1998), Cuyahoga App. No. 72900, citing *Horne v. Woolever* (1959), 170 Ohio St. 178, 163 N.E.2d 378. Further, the Ohio Supreme Court has held that a claim litigated to finality in the United States District Court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in federal court, and there is presently no issue of party identity or privity. *Rogers v. City of Whitehall* (1986), 25 Ohio St.3d 67, 494 N.E.2d 1387. Therefore, if Smith's claims were already decided in federal court, he is barred from raising the same claims in state court.

---

[7] See, also, *Ferrante v. Peters*, Cuyahoga App. No. 90427, 2008-Ohio-3799, in which this court held that the plaintiff's claims were barred by collateral estoppel because he had previously litigated the same claims in federal court. See, also, *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 1998-Ohio-435, 692 N.E.2d 140 (Supreme Court held that collateral estoppel precluded school board from relitigating the issue of its motivation for terminating a teacher through state court review of unfair labor practice proceedings where federal court previously found that the school board violated the teacher's civil rights.).

"In order for a claim to be barred on the grounds of res judicata, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits. *Omlin v. Kaufmann & Cumberland Co., L.P.A.*, Cuyahoga App. No. 82248, 2003-Ohio-4069, citing, *Horne*, supra."

{¶ 75} In the instant case, both the parties and the claims are identical to those in the federal court case. Therefore, Johnson's claims are barred by the doctrine of res judicata, and the trial court's grant of summary judgment for CCSD should be affirmed. The federal court did a thorough analysis, as set forth below:

Failure to Accommodate

{¶ 76} With respect to the failure to provide reasonable accommodation claim, the Sixth Circuit Court of Appeals determined:

"The School District therefore provided Johnson with a reasonable accommodation in response to the only accommodation requests before January 11, 2007 that were based on Johnson's disability. Accordingly, we hold that the district did not err in granting summary judgment to the School District on Johnson's failure to accommodate claim based on events before January 11, 2007."

{¶ 77} With respect to the retaliatory termination claim, the Sixth Circuit Court of Appeals held:

"The district court found that there was no causal connection between Johnson's protected activity and her termination. We agree. In order to establish causation, 'a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not' engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). In rare circumstances, temporal proximity may be enough to establish an inference of causation. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, 'where some time elapses

between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.' Id. The burden of establishing causation is not onerous, but it does rest on the plaintiff. *Nguyen*, 229 F.3d at 563.

"Over a year passed between Johnson's first OCRC charge and her termination, and three months had passed between the filing of this lawsuit and her termination. Standing alone, neither act is sufficiently close in time to Johnson's termination to warrant an inference of causation. See *Mickey*, 516 F.3d at 525. As there is no other evidence that links her termination to her OCRC charge or to this lawsuit, Johnson has not established a causal connection for her prima facie case."

{¶ 78} On remand, the district court found:

"This Court has already dismissed all claims for failure to accommodate prior to January 11, 2007, and the Court of Appeals has affirmed this dismissal. In doing so, both this Court, and the Sixth Circuit noted that Dr. Johnson made no showing that her disability required, or that she requested, accommodation freeing her from extreme temperatures and humidity, assigning her to teach only small classes, or hiring her as a counselor, prior to January 11, 2007. Although she did present the issue of climate control as a medical restriction via doctors['] letters submitted after January 11, 2007, there is no evidence that any doctor has ever indicated that Dr. Johnson could not teach a full class provided her other restrictions were met. There is absolutely no evidence to show that Plaintiff's disability required an accommodation assigning her to teach only small groups of students, or assigning her to a position as a school counselor; this eliminates any claims based on the accommodations set forth in h-I, above.[8]

"Dr. Johnson provides no evidence whatsoever that she was denied accommodations for her standing, sitting, walking, use of ambulatory aids, or continuous speaking restrictions. She also fails to provide any evidence that she was required, by virtue of her job requirements, to engage in more than 'minimal stair[s]' climbing. * * * [T]here is no evidence to suggest that she was required to use the stairs more than twice a day in order to fulfill her obligations of her teaching assignment during that time period, or that she was or would

---

[8] In her complaint, Johnson alleges a list of accommodations should have been made. Claims listed in h and I include providing Johnson with a position as a small group teacher or as a school counselor.

have been required to use stairs more frequently had she returned to work in her classroom after January 11, 2007.

"There is also no evidence, that had she returned to work after submitting doctors' letters establishing that heat and humidity were a medical issue for her, related to her disability, that she would have been asked to teach in a classroom that was not climate controlled (or on the second floor), thereby requiring her to use the stairs more than twice a day in order to satisfy other conditions of her medical accommodations. This eliminates any claims based on the allegedly required accommodations set forth in b-e, and g[9] above * * *.

"Although Dr. Johnson testified that she would have returned to work as soon as Defendants fixed the temperature controls in her classroom, or offered her another classroom with a working thermostat, there is absolutely no evidence that as of January 12, 2007, the temperature controls in the classroom to which Dr. Johnson was assigned were not in working condition; nor is there any actual evidence that Dr. Johnson asked anyone in authority to address the temperature and climate control issues in order to accommodate her disability after her medical letters were updated to include a restriction against high heat and humidity. There is also no evidence that Dr. Johnson checked with anyone in authority at any time after January 11, 2007 to see if those issues had been or could be resolved.

"In August of 2007, after taking an extended leave of absence, utilizing her sick time and being paid in full for the duration, Plaintiff was offered three different teaching positions, at least one of which was in a new, air-conditioned building with an elevator. Plaintiff believed that because these positions were in the classroom, they were not in line with her ADA restrictions. (Johnson Depo. Pg. 57). Rather than state a preference for any of the open positions, Dr. Johnson told Ms. Bowen that she wanted a counselor's position. There was no indication by either Plaintiff or Defendants that any of these classroom assignments would not satisfy Dr. Johnson's need for a climate controlled room.

"In short, there is absolutely no evidence that Dr. Johnson was denied the option/accommodation of working in a climate controlled classroom after January 11, 2007. Any failure to accommodate claim based on this proposed accommodation must, therefore,

---

[9]Accommodations b-e and g were for: (b) no standing for more than one hour per day; (c) alternate sitting, standing: (d) minimal stair climbing; (e) ambulatory aids such as cane or scooter in extreme circumstances; and (g) an aide assignment to escort her students up and down stairs or to otherwise relieve her with regard to standing, walking, and voice-strain.

be dismissed for lack of any evidence in support of the claim." (Original footnotes omitted.)

**{¶ 79}** With respect to the accommodation excusing her from verbally controlling resistive students, the district court explained that "no reasonable person could take the stand that the ability to control, manage and/or discipline students is not an essential function of a teacher, tutor, or counselor." The district court further found that "in so far as Dr. Johnson's doctors agreed that she is incapable of addressing this essential function due to her disability and would need an accommodation excusing her from such duties, she is not qualified to perform the function of teacher or counselor with or without 'reasonable' accommodation." Accordingly, the district court concluded:

> "The accommodations Dr. Johnson has proposed to deal with this restriction: reducing her class size, allowing her to work one-on-one in an interventionist position (which does not exist in the district), or giving her a job as a counselor, are not reasonable accommodations directed at this aspect of her disability, because in any of these situations, a teacher/counselor will, as a natural result and requirement of their position, be required to verbally control resistive behavior in children. Employing a teacher who is admittedly incapable of maintaining control of her students verbally without violating her own ADA restrictions would create an unsafe environment for the teacher and for the students. This is true whether the employee was teaching a full class, a reduced class, or even counseling an individual student. Being able to verbally maintain control of students is an essential element of any position that deals directly with children, therefore, the proposed accommodations suggested by Dr. Johnson are not reasonable accommodations for her disability. Thus, the claim for failure to accommodate on that basis must be dismissed."

**{¶ 80}** Thus, the district court heard all the same arguments regarding Johnson's failure to accommodate claim and dismissed the claim on the merits. Therefore, this claim is now barred by

res judicata. Having found that the CCSD accommodated Johnson's disability, there can be no retaliatory denial of accommodation.

## Discriminatory Discharge

{¶ 81} With respect to Johnson's discriminatory discharge claim, Johnson claims CCSD fired her because of her disability. To establish a prima facie case of disability related to discriminatory discharge, a plaintiff must show: (1) that she is disabled; (2) that she was otherwise qualified for the position; (3) that she suffered an adverse action; (4) that her employer knew or had reason to know of her disability; and (5) she was replaced or the job remained open.

{¶ 82} The district court found that because one of her restrictions prohibited Johnson from verbally controlling students, she was not qualified for her position, with or without a reasonable accommodation. Accordingly, the district court found that Johnson "does not satisfy the qualification element of a claim for discriminatory discharge, and her claim must be dismissed."

{¶ 83} Accordingly, I would affirm the grant of summary judgment for CCSD because Johnson's claims are barred by res judicata.

{¶ 84} The majority would have this case go back to the trial court because the federal court's final decision occurred after the trial court's ruling. The practical effect is to send it back for the trial court to **now** review the federal court decision and apply issue preclusion — an exercise in futility and a waste of judicial resources.

{¶ 85} As the majority recognizes, the federal district court granted summary judgment for CCSD in February 2010, more than one year ago. There should be finality to its judgment.