[Cite as *Wu v. Ohio Civ. Rights Comm.*, 2021-Ohio-1541.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JIASHIN WU, PH.D., | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2020-P-0065** |
| OHIO CIVIL RIGHTS COMMISSION, et al., | : | |
| Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2020 CV 0039.

Judgment: Affirmed.

*Jiashin Wu*, *Ph.D.*, pro se, 6257 Canterbury Drive, Hudson, OH 44236 (Appellant).

*Dave Yost*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215; and *Wayne Williams*, Assistant Attorney General, State Office Building, 11th Floor, 615 West Superior Avenue, Cleveland, OH 44113-1889 (For Appellee).

MARY JANE TRAPP, P.J.

{¶1}   Appellant, Jiashin Wu, Ph.D. ("Dr. Wu"), appeals from the judgment entry of the Portage County Court of Common Pleas affirming a letter of determination upon reconsideration issued by appellee, the Ohio Civil Rights Commission (the "commission"). The commission's letter dismissed Dr. Wu's charge of discrimination against Northeast Ohio Medical University ("NEOMED"), finding no probable cause to issue an administrative complaint and no jurisdiction to pursue the matter.

{¶2} Dr. Wu presents seven assignments of error on appeal, which we group into three categories for purposes of discussion.

{¶3} First, Dr. Wu challenges the commission's adjudication procedures, arguing that the commission (a) was required to provide him an opportunity for a hearing on his charge of discrimination pursuant to R.C. 119.06 and (b) violated his due process rights under the Fourteenth Amendment to the United States Constitution.

{¶4} Second, Dr. Wu challenges the trial court proceedings, arguing that the trial court failed to (a) consider the "whole record" in rendering its judgment, contrary to requirements in R.C. 4112.06, R.C. Chapter 119, and R.C. Chapter 2506, and (b) issue findings of fact and conclusions of law pursuant to Civ.R. 52.

{¶5} Third, Dr. Wu challenges the trial court's substantive review of the commission's order, arguing that the trial court erred by (a) failing to overturn the commission's factual findings, and (b) failing to find that one of the commission's findings rendered its order "illogical."

{¶6} After a careful review of the record and pertinent law, we conclude that Dr. Wu has not established that the trial court abused its discretion in affirming the commission's order.

{¶7} First, we find that the commission (a) was not subject to R.C. 119.06 for purposes of issuing its determination letters and (b) did not violate Dr. Wu's due process rights because it afforded Dr. Wu the adjudicatory procedures required under R.C. Chapter 4112 and Ohio Adm.Code 4112-3-04.

{¶8} Second, we find that (a) the trial court considered the "whole record" for purposes of reviewing the commission's order because the commission did not receive

2

formal evidence during its preliminary investigation, and (b) the requirements in R.C. 4112.06, R.C. Chapter 119, R.C. Chapter 2506, and Civ.R. 52 were not applicable.

{¶9} Third, we find that (a) the trial court's review of the commission's factual findings was limited to whether they made the commission's order "unlawful, irrational, arbitrary or capricious," (b) the trial court employed a sound reasoning process in affirming the commission's order, and (c) one of the commission's findings contained an unintentional clerical mistake that did not render its order "illogical."

{¶10} Thus, we affirm the judgment of the Portage County Court of Common Pleas.

**Substantive and Procedural History**

{¶11} In March 2019, Dr. Wu, proceeding pro se, filed a charge of discrimination with the commission alleging that NEOMED engaged in several unlawful discriminatory practices.

{¶12} Specifically, Dr. Wu alleged that NEOMED has been consistently discriminating against people of Chinese origin by (1) excluding ethnic Chinese people from its faculty; (2) discriminating against ethnic Chinese people in student admission; and (3) discriminating against faculty members of Chinese origin through lay-off, forced resignation, demotion, harassment, and failure to provide a reasonable accommodation. Dr. Wu further alleged that NEOMED's exclusion of and discrimination against ethnic Chinese people is currently on-going. Dr. Wu attached documentation in support of his charge, including faculty demographics and student enrollment data.

{¶13} In June 2019, the commission issued a letter of determination. The commission stated that it investigated Dr. Wu's allegations by "consider[ing] relevant documents and testimony." The commission found that "[t]he information gathered does

3

not support a recommendation that [NEOMED] unlawfully discriminated against [Dr. Wu]." Specifically, the commission found that "the faculty member [Dr. Wu] alleged was denied a reasonable accommodation by [NEOMED] was actually granted an accommodation." The commission further found that it did not have jurisdiction over the balance of the allegations because Dr. Wu's allegations of "demotion, failure to hire, layoff, termination, forced to resign, promotion, discipline, and harassment" occurred more than six months prior to Dr. Wu's filing of his charge of discrimination.

{¶14} The commission determined that it was not probable that NEOMED engaged in an unlawful discriminatory practice in violation of R.C. Chapter 4112 on the "basis of disability, race, [and] national original on the issue of reasonable accommodation." It further determined that there was no jurisdiction under R.C. Chapter 4112 on the issues of "faculty demographics, student enrollment, demotion, failure to hire, layoff, termination, forced to resign, promotion, discipline and harassment." Therefore, the commission dismissed the matter.

{¶15} Dr. Wu filed a notice of request for reconsideration of the commission's determination, setting forth numerous facts that the commission allegedly failed to consider and disputing the commission's finding that it had no jurisdiction over some of Dr. Wu's claims.

{¶16} The commission accepted Dr. Wu's application for reconsideration and, in December 2019, issued a letter of determination upon reconsideration. The commission stated that it "re-examined the information gathered during its original investigation," including "a review of all the relevant information provided by the parties." The commission found that "[a]fter reconsideration," there was "no new evidence to warrant the reversals of its original No Probable Cause and No Jurisdiction decision." The

4

commission again determined that there was no probable cause to issue an administrative complaint against NEOMED and no jurisdiction under R.C. Chapter 4112 to pursue the matter. Therefore, the commission dismissed the matter.

{¶17} In January 2020, Dr. Wu filed a petition for judicial review of the commission's letter of determination upon reconsideration in the trial court.[1] The magistrate filed an order establishing a briefing schedule.

{¶18} The commission filed "the record," which consisted of an affidavit from its director of enforcement and compliance and a copy of its letter of determination upon reconsideration.

{¶19} Dr. Wu and the commission both filed briefs, and Dr. Wu filed a reply brief.

{¶20} In June 2020, the trial court filed a judgment entry affirming the commission's order and overruling Dr. Wu's administrative appeal. The trial court stated that its review was "confined to the record before it and only involves a limited examination of the agency's determination" to determine whether the commission's decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence." The trial court found that the commission "adequately and sufficiently explained its decision not to pursue legal action" against NEOMED. The commission's determination "was clear" that it "did not have jurisdiction over some claims made by" Dr. Wu and "did not find evidence of discrimination in the other claims." Therefore, the trial court determined that the

---

1. Dr. Wu's petition listed himself as "plaintiff" and NEOMED as "defendant." Subsequently, NEOMED filed a motion to dismiss itself as a party pursuant to Civ.R. 21, and Dr. Wu filed a motion to add the commission as "defendant-appellee." The trial court granted both motions.

5

commission's order was not "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence."

{¶21} Dr. Wu appealed the trial court's judgment entry and presents the following seven assignments of error for our review:

{¶22} "[1.] The Trial Court erred (Judgment Entry T.d. 19) by agreeing with Ohio Civil Rights Commission's NO JURISDICTION decision, which violates Ohio R.C. §4112.

{¶23} "[2.] The Trial Court erred (Judgment Entry T.D. 19) by accepting the Commission's illegal total ignorance or misinterpretation of all undisputed factual evidences [sic] of NEOMED's ongoing systematic discriminations [sic] based on ethnicity, race, national origins [sic], gender and ethnic cleansing, by permitting the Commission making [sic] its Determination against these undisputed facts without justification, and by accepting [the] Commission's praise and covering up of NEOMED's unlawful discrimination.

{¶24} "[3.] The Trial Court erred (Judgment Entry T.d. 19) by allowing the Commission to make and keep the illogical same decisions after the Commission changed its Findings of Fact statement to the opposite in its Letter of Determination upon Reconsideration (Td. 14, Exhibit 4) by removing 'NOT' from 'All jurisdictional requirement [sic] for filing a charge had NOT been met' in its earlier Letter of Determination (Td. 14, Exhibit 2).

{¶25} "[4.] The Trial Court erred by making its judgment (Judgment Entry T.d. 19) without justification, reasoning, analyses, or any references to Dr. Wu's assignments of error, issues presented for review, and undisputed facts, in violation of Civ. R. 52.

{¶26} "[5.] The Trial Court erred (Judgment Entry T.d. 19) by failing to consider the 'whole record', because the Trial Court's record was not 'whole', missing the secret

6

findings that [the] Commission claimed owning and solely depended on in making its Determinations against all undisputed true facts submitted by Dr. Wu.

{¶27} "[6.] The Trial Court erred (Judgment Entry T.d. 19) by failing to identify the invalidity of [the] Commission's Determination because the Commission did not give Dr. Wu an opportunity for a hearing.

{¶28} "[7.] The Trial Court erred (Judgment Entry T.d. 19) by allowing [the] Commission's violation of the Fourteenth Amendment to the United States Constitution."

## Standard of Review

{¶29} We review a trial court's judgment affirming an order from the commission for an abuse of discretion. *Yeager v. Ohio Civ. Rights Comm.*, 148 Ohio App.3d 459, 2002-Ohio-3383, 773 N.E.2d 1097, ¶ 12 (11th Dist.). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶30} When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error (although harmless errors and errors not preserved for appellate review are not reversible). *Id.* at ¶ 67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶ 67.

## R.C. Chapter 4112

{¶31} We begin by summarizing the applicable statutory procedures regarding a charge of discrimination.

7

{¶32} The commission was created under R.C. 4112.03 and operates pursuant to R.C. Chapter 4112, as supplemented by Ohio Adm.Code Chapter 4112. The commission is authorized to "[r]eceive, investigate, and pass upon written charges made under oath of unlawful discriminatory practices[.]" R.C. 4112.04(A)(6).

{¶33} R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶34} "Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice" under R.C. 4112.02(A). R.C. 4112.05(B)(1). "[T]he charge shall be in writing and under oath and shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed." *Id.*

{¶35} "Upon receiving a charge, the commission may initiate a preliminary investigation to determine whether it is probable that an unlawful discriminatory practice has been or is being engaged in." R.C. 4112.05(B)(2). *See State ex rel. Westbrook v. Ohio Civ. Rights Comm.*, 17 Ohio St.3d 215, 216, 478 N.E.2d 799 (1985) (holding that since the statute does not mandate a preliminary investigation, "the commission has discretion in determining whether an investigation must be made").

{¶36} This informal procedure is conducted by a member or members of the commission staff to examine the factual basis behind the charge and to obtain the information necessary for the commission to determine whether it is probable that the

8

respondent has engaged in any unlawful discriminatory practices. *McCrea v. Ohio Civ. Rights Comm.*, 20 Ohio App.3d 314, 315-316, 486 N.E.2d 143 (9th Dist.1984); *see* Ohio Adm.Code 4112-3-03(A) and (B).

{¶37} If the commission initiates a preliminary investigation, it may proceed in one of two ways.

{¶38} "If the commission determines after a preliminary investigation * * * that it is probable that an unlawful discriminatory practice has been or is being engaged in, it shall endeavor to eliminate the practice by informal methods of conference, conciliation, and persuasion, or by alternative dispute resolution." R.C. 4112.05(B)(4). If conciliation fails, the commission shall serve the respondent with a complaint and notice of formal hearing to be held before the commission, a member thereof, or hearing examiner. R.C. 4112.05(B)(5).

{¶39} At the hearing, testimony is taken under oath, reduced to writing, and filed with the commission. R.C. 4112.05(F). If, upon review of all the reliable, probative and substantial evidence, the commission determines that the respondent has or is engaged in discriminatory practices, it will set out its findings of fact and conclusions of law and issue a cease-and-desist order to the respondent. R.C. 4112.05(G)(1)(a)(i). In addition, the commission may require the respondent to reinstate certain employees, upgrade the employees and award back pay, if appropriate. R.C. 4112.05(G)(1)(a)(ii). The commission may, however, conclude from all the reliable, probative and substantial evidence that the respondent has not engaged in any unlawful discriminatory practices. In such a case, the commission will state its findings of fact and issue an order dismissing the complaint. R.C. 4112.05(H).

9

{¶40} Alternatively, "[i]f the commission determines after a preliminary investigation * * * that it is not probable that an unlawful discriminatory practice has been or is being engaged in, it shall notify [the complainant] * * * that it has so determined and that it will not issue a complaint in the matter." R.C. 4112.05(B)(4). *See also* Ohio Adm.Code 4112-3-03(F). In addition, the commission "shall state its findings of fact and shall issue and cause to be served on the complainant an order dismissing the complaint as to the respondent." R.C. 4112.05(H).

{¶41} A party may apply to the commission for reconsideration of its determination, which the commission may, in its discretion, accept or reject. Ohio Adm.Code 4112-3-04(A) and (B). If the commission accepts an application for reconsideration, it shall make a determination and notify all parties. Ohio Adm.Code 4112-3-04(B)(2).

{¶42} The final orders of the commission are subject to judicial review upon the filing of a petition in the court of common pleas by the aggrieved party. R.C. 4112.06(A). The commission is required to file with the court a transcript of the record of the proceedings at the hearing, including all evidence and proffers of evidence. R.C. 4112.06(B).

{¶43} Judicial review of the commission's orders is based upon the transcript and such additional evidence as the court allows. R.C. 4112.06(B) and (D). The commission's findings of fact cannot be disturbed by a reviewing court if such findings are supported by reliable, probative, and substantial evidence. R.C. 4112.06(E).

**Judicial Review - "No Probable Cause" Determination**

{¶44} In *McCrea*, *supra*, the Ninth District explained judicial review in the context of a "no probable cause" determination:

10

{¶45} "Prior to the filing of a complaint, the procedure set out in the statute is informal and in the nature of an *ex parte* proceeding. Although the commission investigates the charge, it does not seek to receive formal evidence. Unlike the procedure set forth for a post-complaint formal hearing, R.C. 4112.05 does not provide for the swearing of witnesses, the taking of testimony, or the keeping of a record during the preliminary investigation. A determination of no probable cause is one which cannot, therefore, be reviewed on the basis of reliable, probative and substantial evidence. This standard can be applied by a reviewing court only to orders which come about subsequent to or as the result of an evidentiary hearing. In the absence of an evidentiary hearing, there is no evidence to review on appeal—reliable, probative, substantial, or otherwise. To apply this standard to a probable cause determination would be to create a burden upon the commission where clearly none was contemplated by the legislature.

{¶46} "Thus, although the statute requires the commission's investigator to set forth findings of fact in a determination of no probable cause, these findings of fact are not subject to judicial review in the sense that the court can examine the record to see whether the findings are supported by the evidence. Nevertheless, the legislature intended that the commission set forth the factual findings underlying its decision not to issue a complaint and also that this decision would be subject to judicial review. As an appeal of the commission's determination of no probable cause cannot include a review of its findings of fact, the permissible scope of judicial review is brought into sharper focus.

{¶47} "R.C. 4112.05 vests the commission with the responsibility of making the determination of whether or not it is probable that any unlawful discriminatory practices have been engaged in by the respondent. Due to the inherently subjective nature of the concept of probable cause, such a determination necessarily involves the exercise of the

11

commission's specialized knowledge and expertise, good judgment, and sound discretion. It would therefore be wholly improper and contrary to the clear legislative intent for a reviewing court to substitute its judgment for that of the commission. A refusal to issue a complaint on the grounds of a lack of probable cause must, however, have a legal, rational, and defensible basis. In order to successfully withstand judicial review, the refusal to issue a complaint cannot be based upon unlawful, irrational or arbitrary reasons. Thus, except in those rare instances where the commission's factual findings can be challenged without resort to a re-evaluation by the court of the evidence, the court's review should be confined to a limited examination of the commission's decision for the purpose of determining whether the findings of fact show sufficient justification for its decision not to issue a complaint. Unless the reviewing court finds that the findings of fact show that the commission's decision not to issue a complaint is unlawful, irrational, arbitrary or capricious, the court should not disturb the commission's action." *Id.* at 316-317.

{¶48} The *McCrea* court concluded that "the standard of reliable, probative and substantial *evidence* is applicable only to post-complaint decisions and orders of the commission. The applicable standard of review for a pre-complaint decision not to issue a complaint for lack of probable cause is whether the *decision* is unlawful, irrational, and/or arbitrary and capricious." (Emphasis sic.) *Id.* at 317.

{¶49} The decision and reasoning in *McCrea* have been widely adopted. *Hous. Advocates, Inc. v. Am. Fire & Cas. Co.*, 8th Dist. Cuyahoga Nos. 86444 & 87305, 2006-Ohio-4495, ¶ 10, fn. 9 (collecting cases). This court has also adopted the *McCrea* standard. *See Yeager, supra*, at ¶ 12, quoting *Coleman v. Warner*, 82 Ohio App.3d 263, 265, 611 N.E.2d 878 (6th Dist.1992) ("'Upon review of a determination that no probable

12

cause exists [to issue a complaint], the common pleas court must determine whether [the commission's] decision is unlawful, irrational, and/or arbitrary and capricious'").

{¶50} In light of the foregoing, we address Dr. Wu's assignments of error. For ease of discussion, we do so out of order and, at times, collectively.

### Commission Proceedings

{¶51} We first address Dr. Wu's challenges to the commission's adjudication procedures.

### *Hearing*

{¶52} In his sixth assignment of error, Dr. Wu contends that the trial court erred by failing to overturn the commission's order on the basis that the commission did not provide him an opportunity for a hearing on his charge of discrimination.

{¶53} In support, Dr. Wu cites R.C. 119.06, which states, in relevant part, that "[n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code. Such opportunity for a hearing shall be given before making the adjudication order except in those situations where this section provides otherwise."

{¶54} R.C. Chapter 119, the Administrative Procedure Act, establishes the procedural framework within which state agencies must operate. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 193, 421 N.E.2d 128 (1981) ("*Plumbers*"). As the Supreme Court of Ohio has explained, R.C. 119.01 defines "agency" in three ways for purposes of the Act. *Id.* The first category consists of agencies enumerated in the statute. *Id.* The second category includes "'the *functions* of any administrative or executive officer, department, division, * * * or commission * * * *specifically made subject to* sections 119.01 to 119.13 of the Revised

13

Code.'" (Emphasis added.) *Id.*, quoting R.C. 119.01(A)(1). Administrative agencies with the authority to issue, suspend, revoke or cancel licenses comprise the third group of agencies. *Id.* The statute also exempts certain other named agencies from its coverage. *Id.*

{¶55} The commission is neither expressly included in nor expressly excluded from the statutory definition of agency, and the commission does not engage in licensing activities. *Id.* Therefore, the only potentially applicable portion of the statutory definition is the second category. *Id.*

{¶56} Some of the commission's functions are specifically subject to R.C. Chapter 119. *See, e.g.*, R.C. 4112.05(D) (rulemaking); R.C. 4112.05(G)(1)(a) (service of probable cause order); R.C. 4112.05(I) (modification or setting aside of a finding or order).

{¶57} In *Plumbers*, the Supreme Court of Ohio determined that the commission is not subject to R.C. Chapter 119 for purposes of judicial review because the applicable statute, R.C. 4112.06, makes no reference to it. *Id.* at 194.

{¶58} Here, the commission's letter of determination was issued following its preliminary investigation. R.C. 4112.05(B)(4) does not require the commission to hold a hearing prior to issuing such an order. *See McCrea* at 316. In addition, R.C. 4112.05(B)(4) makes no reference to R.C. Chapter 119.

{¶59} Further, the commission's reconsideration of its determination is governed by Ohio Adm.Code 4112-3-04. This provision does not require the commission to hold a hearing prior to making a determination, and it also makes no reference to R.C. Chapter 119.

{¶60} Therefore, we find that the commission was not subject to R.C. 119.06 in making its determinations.

14

{¶61} Accordingly, we conclude that the trial court did not abuse its discretion by not overturning the commission's order on the basis that the commission did not provide Dr. Wu an opportunity for a hearing.

{¶62} Dr. Wu's sixth assignment of error is without merit.

### Due Process

{¶63} In his seventh assignment of error, Dr. Wu contends that the trial court erred by failing to overturn the commission's order on the basis that the commission violated his due process rights under the Fourteenth Amendment to the United States Constitution.

{¶64} Dr. Wu argues that the commission violated his due process rights by basing its determinations on "secret information"; failing to prepare a record of evidence; failing to prepare written findings of fact and the reasons for its determinations; and failing to provide him with opportunities for a hearing and to cross-examine witnesses.

{¶65} The Supreme Court of the United States has held that the Due Process Clause of the Fourteenth Amendment requires "'at a minimum * * * that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), quoting *Mullane v. Centr. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). A court must engage in a "two-part inquiry: * * * [1] whether [the claimant] was deprived of a protected interest, and, if so, [2] what process was his due." *Id.*

{¶66} In *Logan*, the claimant's protected property interest was his right to have his state's fair employment practices commission consider his employment discrimination charge pursuant to the applicable statutory adjudicatory procedures, which that

15

commission failed to do. *Id.* at 424-426, 431. Accordingly, the court found that the claimant's due process rights were violated. *Id.* at 437.

{¶67} In *Salazar v. Ohio Civ. Rights Comm.*, 39 Ohio App.3d 26, 528 N.E.2d 1303 (6th Dist.1987), the Sixth District applied the *Logan* inquiry in the context of a "no probable cause" determination from the commission. The claimant had filed a charge of unlawful handicap discrimination against his employer with the commission. *Id.* at 27. The commission conducted a preliminary investigation and found that there was no probable cause to believe that the claimant had been unlawfully discriminated against on the basis of his handicap. *Id.*

{¶68} On appeal, the claimant argued that the Due Process Clause of the Fourteenth Amendment guaranteed him the right to be heard at an evidentiary hearing at the preliminary investigation stage, where he could have presented evidence, cross-examined witnesses, and inspected the commission's investigative file. *Id.* at 29.

{¶69} The Sixth District held that the claimant had a protected property interest in filing a charge of discrimination with the commission and in having the commission pass upon it. *Id.* However, Ohio law had not conferred upon the claimant "an individual entitlement to an adversary-oriented, evidentiary hearing at the preliminary investigation stage" of his discrimination charge. *Id.* at 30. The court concluded that there was no basis upon which to invoke the protections accorded to "property" under the Fourteenth Amendment. *Id.* Accordingly, the court held that the claimant "did not possess any protected property interest susceptible of deprivation without due process of law." *Id.*; *see Tarshis v. Ohio Civ. Rights Comm.*, 10th Dist. Franklin No. 19AP-172, 2019-Ohio-3633, ¶ 13 (holding same).

16

{¶70} We agree with the Sixth District's analysis and conclusion. In this case, the commission afforded Dr. Wu the adjudicatory procedures required under R.C. Chapter 4112 by conducting a preliminary investigation, making a "no probable cause" determination, and notifying Dr. Wu of its determination, findings of fact, and order dismissing the matter.

{¶71} The commission also afforded Dr. Wu the adjudicatory procedures set forth in Ohio Adm.Code 4112-3-04 by accepting Dr. Wu's application for reconsideration, making a determination, and notifying Dr. Wu of its determination.

{¶72} Dr. Wu's arguments appear to be based on his dissatisfaction with the commission's existing procedures. However, this is insufficient to establish a violation of his due process rights under the Fourteenth Amendment. Desired changes to the commission's adjudicatory procedures would be best addressed to the commission itself. *Salazar* at 31.

{¶73} Accordingly, we conclude that the trial court did not abuse its discretion by not overturning the commission's order on the basis that the commission violated Dr. Wu's due process rights.

{¶74} Dr. Wu's seventh assignment of error is without merit.

**Trial Court Proceedings**

{¶75} We next address Dr. Wu's challenges to the trial court's procedures in reviewing the commission's order.

***The Record***

{¶76} In his fifth assignment of error, Dr. Wu contends that the trial court failed to consider the "whole record" in rendering its judgment.

17

{¶77} Dr. Wu first argues that the commission illegally "collected and used secret information" that it omitted from the record filed in the trial court, in violation of R.C. 4112.06.

{¶78} As Dr. Wu correctly notes, R.C. 4112.06(B) provides that after the filing of a proceeding for judicial review, "the commission shall file with the court a transcript of the record *upon the hearing before it*. The transcript shall include all proceedings in the case, including all evidence and proffers of evidence." (Emphasis added.) In addition, R.C. 4112.06(G) provides that "[t]he commission's copy of the *testimony* shall be available at all reasonable times to all parties without cost for examination and for the purposes of judicial review of the order of the commission. The petition shall be heard on the transcript of the record without requirement of printing." (Emphasis added.)

{¶79} As indicated, the commission does not receive formal evidence in its preliminary investigation of a charge of discrimination. *McCrea* at 316. Unlike the procedure set forth for a post-complaint formal hearing, R.C. 4112.05 does not provide for the swearing of witnesses, the taking of testimony, or the keeping of a record during the preliminary investigation. *Id.* Thus, the "record" that is available for review is limited when dealing with a preliminary investigation by the commission. *Van Horn v. Ohio Civ. Rights Comm.*, 11th Dist. Trumbull No. 94-T-5117, 1996 WL 200577, *2 (Feb. 9, 1996).

{¶80} As this court has recognized, R.C. 4112.05(H) requires the commission to set forth "findings of fact" which support its determination that no probable cause exists in support of a claim of discrimination. *Id.* It is these findings of fact that the trial court considers, pursuant to its judicial review function under R.C. 4112.06, when reviewing a preliminary investigation conducted by the commission. *Id.*

18

{¶81} Therefore, the trial court correctly confined its review to the record as filed by the commission, namely the commission's letter. *See McCrea* at 317; *Cox v. Dayton Public Schools Bd. of Edn.*, 2d Dist. Montgomery No. 28261, 2019-Ohio-2591, ¶ 42; *May v. Ohio Civ. Rights Comm.*, 58 Ohio App.3d 56, 57, 568 N.E.2d 716 (1st Dist.1989).

{¶82} Dr. Wu also argues that the commission violated R.C. 119.12, which governs judicial review of orders issued by state agencies pursuant to an adjudication and requires the agency to "prepare and certify to the court a complete record of the proceedings of the case." R.C. 119.12(J). Similarly, within his second assignment of error, Dr. Wu argues that the commission violated R.C. 119.09 by failing to include in its record Dr. Wu's "proffer of evidence" that he submitted with his charge of discrimination.

{¶83} The Supreme Court of Ohio has expressly determined that the commission is not subject to R.C. 119.12 for purposes of judicial review. *Plumbers*, *supra*, at 194. R.C. 4112.06(B), which governs the commission's filing of the record in the trial court, also makes no reference to R.C. Chapter 119. Therefore, we find that the commission was also not subject to R.C. 119.09.

{¶84} Dr. Wu further argues that the commission and the trial court were subject to the procedural requirements in R.C. Chapter 2506, which addresses "appeals from orders of administrative officers and agencies." Dr. Wu cites R.C. 2506.02, which requires "the officer or body from which the appeal is taken" to "prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision." Dr. Wu also cites R.C. 2506.03(B), which requires the trial court to hear additional evidence if any of the circumstances set forth in R.C. 2506.03(A)(1) to (5) apply.

{¶85} R.C. Chapter 2506 expressly applies to final orders "of any officer, tribunal, authority, board, bureau, commission, department, or other division *of any political subdivision of the state.*" (Emphasis added.) R.C. 2506.01(A). The commission is an agency of the state, not an agency of a political subdivision of the state. *Toliver v. Montgomery Cty. Jobs and Family Servs. Div.*, 2d Dist. Montgomery No. 22979, 2009-Ohio-3521, ¶ 36; *see* R.C. 4112.03. By contrast, R.C. 4112.06 expressly applies to the judicial review of the commission's final orders. Thus, we find that R.C. 2506.02 and R.C. 2506.03 were not applicable.

{¶86} Accordingly, we conclude that the trial court considered the "whole record" applicable to its review of the commission's order and, thus, did not abuse its discretion.

{¶87} Dr. Wu's fifth assignment of error and the discussed portion of his second assignment of error are without merit.

## Civ.R. 52

{¶88} In his fourth assignment of error, Dr. Wu contends that the trial court erred in failing to issue findings of fact and conclusions of law pursuant to Civ.R. 52.

{¶89} Civ.R. 52, entitled "findings by the court," states, in relevant part, as follows:

{¶90} "When questions of fact *are tried by the court* without a jury, judgment may be general for the prevailing party *unless one of the parties in writing requests otherwise* before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law." (Emphasis added.)

20

{¶91} In this case, there is no indication in the record that Dr. Wu requested findings of fact in writing, as required by the rule. Further, we find that Civ.R. 52 was not applicable to the trial court's review of the commission's order.

{¶92} The applicability of Civ.R. 52 to administrative appeals depends on the role assumed by the trial court. *Pataskala Banking Co. v. Etna Twp. Bd. of Zoning Appeals*, 5th Dist. Licking Nos. 07-CA-116, 07-CA-117, & 07-CA-118, 2008-Ohio-2770, ¶ 18. When no factual determinations are made, Civ.R. 52 is not applicable. *Roseman v. Reminderville*, 14 Ohio App.3d 124, 129, 470 N.E.2d 224 (9th Dist.1984).

{¶93} When a claimant appeals to the common pleas court from a "no probable cause" determination, the common pleas court acts as a reviewing court. *Hous. Advocates*, *supra*, at ¶ 28; *see May*, *supra*, at 57 ("There is no provision in the statutory scheme for a trial de novo in the common pleas court"). The trial court's review is "confined to a limited examination of the commission's decision for the purpose of determining whether the findings of fact show sufficient justification for its decision not to issue a complaint." *McCrea* at 317. R.C. 4112.06(D), which permits the admission of additional evidence, only applies when the commission has held an evidentiary hearing. *Hous. Advocates* at ¶ 28.

{¶94} Since the trial court did not make factual determinations, Civ.R. 52 was not applicable.

{¶95} Dr. Wu's fourth assignment of error is without merit.

**The Trial Court's Decision**

{¶96} Finally, we address Dr. Wu's challenges to the trial court's substantive review of the commission's order.

21

***Factual Findings***

{¶97}   In his first assignment of error and within his second assignment of error, Dr. Wu contends that the trial court erred by failing to overturn the commission's factual findings that (1) it did not have jurisdiction over some of Dr. Wu's allegations; (2) it was not probable that NEOMED had engaged in an unlawful discriminatory practice; and (3) NEOMED actually granted a reasonable accommodation to the faculty member referenced in Dr. Wu's charge of discrimination.

{¶98}   According to Dr. Wu, the commission ignored and/or misinterpreted the evidence regarding NEOMED's discriminatory practices.  In essence, Dr. Wu argues that the trial court erred by failing to reevaluate the evidence underlying the commission's factual findings.

{¶99}   The trial court did not have such authority, and, in most cases, reevaluation of the commission's evidence is not possible.  As the *McCrea* court recognized, "[i]n the absence of an evidentiary hearing, there is no evidence to review on appeal—reliable, probative, substantial, or otherwise."  *Id*. at 317; *see Pease v. Ohio Civ. Rights Comm*., 8th Dist. Cuyahoga No. 102016, 2015-Ohio-1386, ¶ 7 ("[T]he product of the [the commission's] investigation does not constitute evidence that could be reevaluated by the trial court, but rather only contains the factual findings contained in its Letter").

{¶100} "Due to the inherently subjective nature of the concept of probable cause, such a determination necessarily involves the exercise of the commission's specialized knowledge and expertise, good judgment, and sound discretion.  It would therefore be wholly improper and contrary to the clear legislative intent for a reviewing court to substitute its judgment for that of the commission."  *McCrea* at 317.  Unless "the findings of fact show[ed] that the commission's decision not to issue a complaint [was] unlawful,

22

irrational, arbitrary or capricious," the trial court may not "disturb the commission's action." *Id.* The trial court shall not delve into how the commission arrived at its decision. *Van Horn* at *3.

{¶101} Dr. Wu's strong disagreement with the commission's evaluation of the evidence did not create a legal basis upon which the trial court could reverse the commission's order. As an appellate court, our review is further limited to whether the trial court abused its discretion.

{¶102} The trial court found that the commission "adequately and sufficiently explained its decision not to pursue legal action against [NEOMED]. The determination was clear that the [commission] did not have jurisdiction over some claims made by [Dr. Wu] and the [commission] did not find evidence of discrimination in the other claims."

{¶103} Since the trial court's judgment reflects a sound reasoning process, we conclude that the trial court did not abuse its discretion in reviewing the commission's order.

{¶104} Dr. Wu's first assignment of error and the remainder of his second assignment of error are without merit.

### *Jurisdiction Finding*

{¶105} In this third assignment of error, Dr. Wu contends that the trial court erred in failing to find that one of the commission's findings rendered its order "illogical."

{¶106} As Dr. Wu accurately notes, the commission's earlier letter of determination stated that "[a]ll jurisdictional requirements for filing a charge have **NOT** been met," while its letter of determination upon reconsideration stated that "[a]ll jurisdictional requirements for filing a charge had been met." (Emphasis sic.) According to Dr. Wu, the commission's

23

removal of the word "not" was intentional, and the commission "could no longer derive the same conclusions" from this statement.

{¶107} Contrary to Dr. Wu's assertions, it appears that the commission made an unintentional clerical mistake in its reconsideration order. In making the challenged statement, the commission was referencing its earlier letter of determination, where it found that it did not have jurisdiction over some of Dr. Wu's allegations because the alleged discriminatory practices took place more than six months prior to Dr. Wu's filing of his charge. Therefore, the intended meaning of the challenged statement is readily apparent from the record.

{¶108} Accordingly, we conclude that the trial court did not abuse its discretion by failing to overturn the commission's order on the basis that it was "illogical."

{¶109} Dr. Wu's third assignment of error is without merit.

{¶110} In sum, Dr. Wu has not established that the trial court abused its discretion in its review of the commission's order.

{¶111} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

24